EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.*
GERÓNIMO ROSADO PÉREZ, acusado y apelante.

Número 15822.
*Sometido:* 1 de junio de 1955. *Resuelto:* 23 de junio de 1955.

*Santos P. Amadeo,* abogado del apelante; *Hon. Secretario de Justicia Interino José C. Aponte* y *Rafael L. Ydrach Yordán, Fiscal del Tribunal Supremo,* abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del Tribunal.

Jerónimo Rosado Pérez fué acusado y convicto del delito de escalamiento en primer grado. Se le sentenció a sufrir una pena indeterminada de presidio, con trabajos forzados. Apeló para ante este Tribunal. En apelación señala dos errores, el segundo de los cuales es al efecto de que: "la corte sentenciadora erró al no instruir al jurado que el delito de escalamiento en primer grado requiere un intento específico para ser cometido y que el estado de intoxicación puede ser de tal naturaleza que le imposibilite formar dicho intento al acusado, trayendo como resultado la exoneración de la comisión del delito." El Fiscal de este Tribunal se allana a la revocación por el motivo señalado, indicando en su alegato, entre otras cosas, que "en aquellos delitos donde es elemento necesario una *intención específica,* se hace indispensable que el juzgador de hechos considere en la determinación de la culpabilidad o inocencia toda la evidencia que sobre su embriaguez el acusado haya podido producir." Estamos de acuerdo. Los testigos de cargo declararon que el acusado confesó en presencia de ellos la comisión del delito, pero que sostuvo que al momento de realizarlo, e inmediatamente antes de ello, se hallaba en completo estado de embriaguez. En términos parecidos se expresaron la esposa del acusado y el acusado mismo, tanto al declarar éste durante el juicio como en una confesión escrita hecha por él ante un juez de paz. Terminado el desfile de la prueba y luego de darse las instrucciones de rigor, el jurado se retiró

a deliberar. Minutos más tarde el jurado fué llamado a sala por el juez sentenciador, quien al dirigirse a ellos nuevamente se expresó del siguiente modo:

"Está el acusado presente. Los llamé porque parece que mis instrucciones no fueron lo suficientemente claras para que el jurado haya llegado ya a un veredicto al minuto de subir y bajar. No les ordené que rindieran el veredicto aquí por seguir la costumbre del tribunal de que suban al salón de deliberaciones. Mis instrucciones son específicas; *es una orden del tribunal de condenar al acusado, de traer un veredicto de culpable de escalamiento en primer grado.* No pueden traer ningún otro veredicto. No hay nada que discutir ni deliberar. El acusado ha admitido los hechos en corte abierta bajo su palabra jurada y, al mismo tiempo, ha admitido que él confesó ante el Juez de Paz y que confesó ante la persona perjudicada. . . . *Les he dicho que no puedo dar instrucciones que no sean de condenar; no* puedo dar instrucciones de absolución." (Bastardillas nuestras.)

Oídas estas instrucciones la defensa manifestó:

"Tomamos respetuosamente excepción a las instrucciones del tribunal, tanto a las anteriores como a las que acaba de dar en este momento."

Varios jurados se dirigieron entonces al juez sentenciador y éste prosiguió instruyéndoles así:

"*La embriaguez no es defensa para ningún delito.* Eso me faltó decirles también. . . . Les dije que no podía, estaba impedido de dar instrucciones que no fueran de condenar, porque aquí es lo único que ha habido. Aquí lo único que ha habido es prueba del fiscal de tres testigos de que el acusado penetró durante las horas de la noche en un establecimiento público y hurtó y luego le ocuparon los objetos hurtados; que él confesó delante de tres personas, que confesó ante el Juez de Paz y que hizo una confesión por escrito. Además de eso hay prueba del acusado mismo que se sienta a declarar, corroborado por su esposa, *que dijo que él cometió ese delito y que estaba en estado de embriaguez. Esa no es defensa. El estado de embriaguez no es defensa. Una persona, por el hecho de estar embriagada, es capaz de cometer cualquier delito, a menos que estuviera loca.* Pero si él mismo ha dicho y ha explicado cómo realizó los he-

chos: que entró a ese cafetín, que sacó y se tomó una cerveza; que iba a buscar una lata de spaghetti; que al salir le dió la tentación de cometer el escalamiento y lo cometió. O sea, aquí el jurado no tiene . . . Ninguna persona que oiga esa prueba puede tener duda alguna de que el delito se ha cometido. No hay contradicción absoluta en los testigos de cargo y de defensa ni en los testigos unos con otros; ni en lo más mínimo de la prueba hay una contradicción. Lo único que ha hecho el abogado es presentar la prueba honradamente, la que él tiene, y poner a declarar al acusado; y toda esta prueba me sirve a mí luego, al dictar sentencia, para ser benévolo con el acusado, porque no es lo mismo una persona que haya sido toda la vida una persona decente . . ." (Bastardillas nuestras.)

■ Aunque el acusado no se anotó excepciones específicas a las anteriores instrucciones — *Pueblo* v. *Vélez*, 77 D.P.R. 817; *Pueblo* v. *Piazza*, 60 D.P.R. 575, 585; *Pueblo* v. *Cardona*, 50 D.P.R. 108, 112; *Pueblo* v. *Quirós*, 48 D.P.R. 962, 966; *United States* v. *Daily*, 139 F.2d 7, 9—consideramos que el error cometido es fundamental y que el mismo debe dar lugar a la revocación. Veamos:

■ Según el art. 408 del Código Penal "Toda persona que entrare en una casa, aposento, habitación, casa de vecindad, taller, almacén, tienda, . . . con el propósito de cometer hurto o ratería, o cualquier delito grave (*felony*) será culpable de escalamiento." Por otro lado, el art. 41 del mismo cuerpo legal preceptúa que "ningún acto cometido por una persona en estado de voluntaria embriaguez es menos criminal por haberse cometido en tal estado. *Pero siempre que la existencia real de algún fin, motivo o intento determinado fuere elemento indispensable para constituir alguna clase o grado de delito especial el jurado podrá tomar en consideración el hecho de que el acusado se hallaba entonces ebrio, al determinar el fin, motivo o intento con que cometió el acto.*" (Bastardillas nuestras.) Si este último artículo del Código Penal tan sólo contuviera la primera oración antes copiada, es posible que las precedentes instrucciones se ajustaran a derecho. Pero ello no es así. Ese artículo con-

tiene, sin embargo, una segunda oración, cuyo alcance y efecto debió tener muy presente el juzgador al trasmitir sus instrucciones al jurado. En relación con el mismo nos expresamos así en *Pueblo* v. *Rivera*, 70 D.P.R. 570, 573:

"La regla adoptada en aquellas jurisdicciones donde prevalecen disposiciones de ley idénticas o similares a la contenida en el artículo 41 de nuestro Código Penal es que la embriaguez—voluntaria—tiene que ser de tal grado o carácter que inhiba en el acusado su facultad mental para formar la intención específica requerida por el Código para la convicción de un delito—o grado del mismo—en el cual se requiere tal intención específica, y que *la determinación de ese hecho es esencialmente una para el jurado o la corte juzgadora,*" citando innumerables casos del continente. (Bastardillas nuestras.)

En relación con aquellos casos en que un acusado ha cometido el delito imputádole en estado de embriaguez, el tratadista Burdick en su obra *Law of Crime*, vol. 1, ed. de 1946, se expresa del siguiente modo a la pág. 216:

"Se ha resuelto, sin embargo, en la mayoría de los estados, como excepción a la regla general, que si a una persona se le acusa de un delito que exige, como elemento esencial, una intención específica, o algún motivo o fin particular, distinto a la intención general o corriente requerida en todo delito, prueba de la intoxicación del acusado al tiempo en que cometió el delito es admisible para demostrar que debido a su estado mental él no era capaz de formar la intención específica, o de acariciar el motivo o fin necesariamente requeridos para constituir el delito, y que al presentarse prueba suficiente a ese efecto, generalmente la embriaguez constituye una defensa."

El comentarista Wharton en el vol. 1 de su obra *Criminal Law*, duodécima ed., se expresa así a las págs. 98 y 101:

"Cuando se requiere determinada condición de la mente para constituir un delito, la intoxicación puede ser probada para explicar tal condición. . . . . Si la existencia de una intención específica . . . es esencial a la comisión de un delito, el hecho de que el acusado estuviera ebrio al realizar el acto, que unido a esa intención constituiría tal delito, debe ser tomado en consideración por el jurado al decidir si el acusado tuvo o no tal intención."

A ese mismo' efecto véanse además *Hopt* v. *People*, 104 U. S. 631, 26 L. Ed. 873; *People* v. *Smith*, 14 C.2d 541; *People* v. *Gordan*, 103 Cal. 568, 575; *People* v. *Blake*, 65 Cal. 275.

 El art. 408 de nuestro Código Penal requiere de manera expresa que para que se cometa el delito de escalamiento la penetración a la casa, tienda, etc., debe haber sido *"con el propósito de cometer hurto o ratería . . ."* ([1]) (Bastardillas nuestras.) De suerte, pues, que en este delito la intención desempeña un papel de importancia, la determinación de cuya existencia debe dejarse enteramente al juzgador de los hechos, que en este caso lo era el jurado que conocía del caso. Sobre este particular en *People* v. *Gibson*, 107 Cal. App. 76, 82, se dice que: "la esencia del delito de escalamiento consiste en la intención con que la penetración se realiza."

En *People* v. *Phelan*, 93 Cal. 111, el apelante y otras dos personas fueron acusados del delito de escalamiento por haber penetrado en un edificio con la intención de cometer hurto. La contención fundamental del apelante Phelan fué que el tribunal sentenciador había errado al trasmitir al jurado sus instrucciones en relación con el estado de intoxicación en que él se hallaba. Al revocar la sentencia apelada y ordenar la celebración de un nuevo juicio el Tribunal Supremo del Estado de California se expresó así a la pág. 113:

"El penetrar en un edificio con intención de cometer hurto mayor o menor, o cualquier delito grave, constituye escalamiento. . . . La intención con que se penetra en un edificio es un elemento necesario para constituir una especie específica de delitos, como por ejemplo el de escalamiento. Por tanto, el jurado quizás pudo tomar en consideración el hecho, de ser tal hecho, de que el acusado se hallaba intoxicado al momento en que penetró en el edificio, para determinar el propósito, motivo o intención con que realizó el acto. . . . No estamos

---

([1]) El texto inglés, que es el que debe prevalecer, (véase el art. 13 del Código Civil, ed. de 1930) dice: "with intent to commit grand or petit larceny," cuya traducción correcta es *"con intención de cometer hurto mayor o menor."*

en libertad de especular respecto a cuál hubiera sido el veredicto si se hubiera dado una instrucción adecuada en vez de una errónea. La instrucción, en la forma en que lo fué, eliminó de la consideración del jurado evidencia que el Código dispone el jurado puede considerar al determinar la intención con que se realizó el acto.

"La evidencia en este caso tiende a probar que el apelante, tanto antes como al tiempo en que penetró en el edificio, estaba intoxicado. Si estaba intoxicado a tal extremo que era incapaz de formar o de acariciar la intención de cometer el delito de hurto mayor o menor, o cualquier delito grave, dentro del edificio ello era cuestión que incumbía exclusivamente al jurado determinar."

En términos similares podemos expresarnos en este caso. Una instrucción a ese efecto debe ser trasmitida al jurado cuando ante éste ha desfilado prueba que ha tendido a demostrar la intoxicación del acusado al tiempo de cometer el delito y antes de ello. En este caso, como se ha visto, hubo semejante prueba. [2] El no haber dejado el juez sentenciador a la determinación del jurado si el acusado en este caso estaba embriagado a tal extremo que era incapaz de formar o de abrigar la intención de cometer hurto mayor o menor al penetrar en el establecimiento de su vecino, fué un error cuya comisión debe dar lugar a la revocación.

---

[2] En su confesión el acusado manifiesta "que en la noche del 28 de diciembre de 1953, como a la 1 a.m., después de tomar unos tragos para disipar las penas por motivo de una discusión con mi esposa, decidí penetrar en el establecimiento comercial propiedad de Manolín Díaz Morales;" y en su declaración ante el jurado depuso que la noche del día antes indicado fué a visitarle un señor que él conoció en la YMCA; que comieron en su casa y luego se fueron a un cafetín de su propiedad; que siguieron bebiendo en el cafetín hasta las 12 de la noche, cuando el señor que le visitaba regresó a San Juan; que entonces él volvió a su casa y al pedirle comida a su esposa ésta le dijo que no la había; que en vista de ello él regresó a su cafetín a buscar una lata de *spaghetti* y que entonces "me dió la intención de cometer el delito ése."

La esposa del acusado declaró que éste y el señor que les visitaba comieron en su casa; que luego salieron y su esposo regresó por la madrugada "demasiado de borracho"; que su esposo (el acusado) le dijo que le sirviera comida y ella le contestó que ésta se había acabado; que entonces él salió y regresó como a la hora "más borracho casi de lo que hubiera salido" y se acostó con toda la ropa puesta.

En vista de la conclusión anterior, es innecesario discutir el otro error señalado.

*La sentencia apelada será revocada, debiendo devolverse el caso al Tribunal Superior de origen para la celebración de un nuevo juicio.*