EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* FRANCISCO TORRES PÉREZ, acusado y apelante.

Número 16263.
*Sometido:* 24 de agosto de 1959. *Resuelto:* 12 de febrero de 1960.

*Elí B. Arroyo,* abogado del apelante; *Hon. Procurador General J. B. Fernández Badillo y Carlos G. Látimer, Procurador Auxiliar,* abogados de El Pueblo, apelado.

El Juez Asociado Señor Saldaña emitió la opinión del Tribunal.

Francisco Torres Pérez fue procesado en el Tribunal Superior, Sala de Ponce, por un delito de escalamiento en primer grado. Se le imputó que ". . . durante horas de la noche del día 17 de abril de 1955, y en Adjuntas, Puerto Rico . . . ilegal, voluntaria, maliciosa y criminalmente penetró en la residencia de Justina Vélez Viuda de Vera, con la intención de cometer, como cometió, hurto o ratería . . .". Celebrado el juicio ante tribunal de derecho, fue hallado culpable y sentenciado a una pena indeterminada de uno a cinco años de prisión. En este recurso de apelación nos pide que revoquemos dicha sentencia. Alega para ello que el tribunal a quo incidió en error: (1) Al declarar culpable al acusado, a pesar de que El Pueblo no probó la penetración ilegal en la propiedad de la denunciante; (2) Al declarar culpable al acusado, a pesar de que El Pueblo no probó la intención específica del acusado de cometer hurto o ratería; (3) Al permitir que El Pueblo probase la identificación de la propiedad alegadamente hurtada mediante el uso de preguntas claramente sugestivas, privando así al acusado de un juicio justo e imparcial; (4) Al rechazar la defensa de coartada, a pesar de que la prueba de El Pueblo no rebatió dicha defensa; y (5) En la alternativa, al declarar culpable al acusado de escalamiento en primer grado, a pesar de que no se probó que el delito se hubiese cometido de noche.

■ En primer lugar, hay que resolver si la prueba practicada en el juicio es suficiente para sostener dos determinaciones esenciales: 1ª que el acusado *penetró ilegalmente* en la residencia de Doña Justina Vélez Vda. de Vera; y 2ª que dicha penetración se verificó *con la intención específica de cometer hurto o ratería.* Este es el problema que en realidad suscita el apelante en sus dos primeros apuntamientos de error. Ante todo debemos señalar que el ministerio público no tiene que probar con evidencia directa esos dos elementos del delito de escalamiento. Se ha resuelto reiteradamente que tanto la penetración ilegal como la existencia de una intención específica de cometer hurto o ratería son hechos que pueden ser demostrados mediante evidencia circunstancial, es decir, por inferencias razonables que surgen del conjunto de hechos y circunstancias probados. *Pueblo* v. *Bayron*, 40 D.P.R. 818 (1930); *Pueblo* v. *Rivera*, 67 D.P.R. 297 (1947) y *Pueblo* v. *Rosado*, 79 D.P.R. 25 (1956). En el presente caso, según indica el fiscal en su informe, la prueba creída por el tribunal sentenciador demostró lo siguiente: ". . . que allá para el día 16 de abril de 1955 la perjudicada, Justina Vélez Viuda de Vera, quien vivía para esa fecha en una casa sita en la carretera del barrio Garza de Adjuntas, Puerto Rico, en compañía de su hija Blanca Vera Vélez, salió para el pueblo de Ponce a visitar una hija que residía en Villa Grillasca. Que antes de salir hacia Ponce cerraron bien toda la casa y al regresar al día siguiente, 17 de abril de 1955, como a eso de las 8:00 de la noche, notaron que la misma se encontraba abierta y las luces estaban prendidas. Que al acercarse a la casa ambas testigos vieron al acusado cuando salía de la misma con un bulto sobre la cabeza. Que al verlas el acusado huyó y en el camino abandonó el bulto. Que entraron a la casa y notaron que un baúl en donde guardaban varias sábanas, colchas, ropa interior y otros objetos, había sido violentado y del mismo había hurtado dichos objetos. Notaron además, que una maleta había sido también violentada y de la misma habían

hurtado varios artículos. Que al pasar a la cocina de la casa notaron que habían removido una tabla del seto, habían abierto la puerta, por donde habían penetrado a la casa. Que los artículos que hurtó el acusado los había envuelto en una frisa de varios colores propiedad de la señora Justina Vélez Viuda de Vera. Declaró dicha señora estar segura de que se trataba del acusado Francisco Torres Pérez, a quien ella vio saliendo de su casa con los objetos hurtados. Su hija Blanca Vera Vélez aseguró al Tribunal que había sido al acusado a quien había visto salir esa noche 17 de abril de 1955, de su casa y lo describe vistiendo pantalón azul, camisa blanca y zapatos blanco y brown. Dijo que vio el paquete que llevaba en la cabeza y reconoció la frisa que envolvía dichos artículos, como la frisa propiedad de su señora madre. Dicha frisa y demás artículos le fueron presentados a la perjudicada por el juez investigador en la corte, los que identificó como de su propiedad y como los mismos que le habían sido hurtados. Dichos artículos le fueron entregados por el magistrado mediante el correspondiente recibo. Tanto los testigos del Pueblo, como los testigos de defensa recuerdan exactamente el día a que se refieren los hechos ya que se trataba del domingo 17 de abril de 1955, fecha en que se celebraban en Adjuntas unas primarias." ¿Puede inferirse de esos hechos y circunstancias probados que el apelante no sólo penetró ilegalmente en la referida residencia sino que también lo hizo con la intención específica de cometer hurto o ratería? Creemos que sí. Basta subrayar lo siguiente: (1) la dueña de la casa y su hija habían salido para Ponce, dejando su residencia bien cerrada, y al regresar vieron al apelante saliendo de la misma con un bulto lleno de objetos que había hurtado de un baúl y de una maleta que se encontraban dentro de la casa; (2) para penetrar en la residencia se había arrancado una tabla de la pared de la casa y se había abierto la puerta de la cocina; y (3) cuando el apelante vio a la dueña de la casa y a su hija, inmediatamente "se fue corriendo y se metió por unas bambúas", abandonando el

bulto de objetos hurtados. Aun de esos hechos escuetos lógica y razonablemente cabe inferir que el apelante penetró en la residencia ilegalmente y con la intención específica de cometer hurto o ratería. Cf. *Pueblo* v. *Rosado,* 79 D.P.R. 25 (1956); *Pueblo* v. *Rosado,* 78 D.P.R. 436 (1955); *Pueblo* v. *Rivera,* 67 D.P.R. 297 (1947); *Pueblo* v. *Bayron,* 40 D.P.R. 818 (1930); *Ex parte Seyfried,* 264 P.2d 685; *Pueblo* v. *Alvarado,* 331 P.2d 157; Fricke, *California Criminal Law* (5ª ed.) 286–290; Clark & Marshall, *The Law of Crimes* (6ª ed.) 881–891 y Nota, *A Rationale of the Law of Burglary,* 51 Colum. L. Rev. 1009–1030 (1951).

Si analizamos el tercer apuntamiento de error, hallaremos que también carece de méritos. Se reclama lo siguiente: ". . . no existe prueba competente de que el paquete que le entregara el juez a la perjudicada fuese el mismo que, según se alega, llevara el acusado sobre su cabeza . . .", ya que el fiscal probó la identificación del referido paquete mediante una serie de "preguntas claramente sugestivas".(¹) Además se alega que tal identificación era imprescindible para declarar culpable al encausado, por lo cual se privó a éste de un juicio justo e imparcial. No estamos de acuerdo. Primero, el fiscal formuló las preguntas que ahora el apelante llama "sugestivas" sin que se opusiera la defensa. Por eso, aunque la prueba testifical así obtenida fuese inadmisible, ciertamente no puede ser objetada por primera vez en apelación. Véase *Pueblo* v. *Jiménez,* 78 D.P.R. 7, 11 (1955). [3] Segundo, el hecho de que le representara un defensor

---

(¹) La objeción se refiere al testimonio que prestó Justina Vélez Vda. de Vera en el curso del interrogatorio directo: "Fiscal: ¿El paquete que le entregó el juez de Adjuntas era el mismo que llevaba el acusado en la cabeza? R. El mismo envuelto en una frisa. Defensa: No señor Juez. Dice que si es el mismo paquete que llevaba el acusado. No podría hacer esa pregunta. Hon. Juez ¿Por qué? Defensa: Podría decir la persona que salió de la casa. Hon. Juez: No es una conclusión; es una percepción directa. Fiscal: La pregunta es, ¿ese paquete era el mismo paquete que llevaba el acusado cuando usted lo vio salir de la casa? R. El mismo. Fiscal: ¿No iba envuelto en una frisa? R. Sí señor. P. ¿Esa frisa no era suya? R. Sí señor. P. ¿Esa frisa fue la que usted vio sobre la cabeza del acusado? R. Sí señor y un palito."

público no coloca al apelante en mejor posición para hacer ante nos dicho planteamiento. Según demuestran a saciedad los autos del caso, durante todo el proceso el encausado tuvo una defensa hábil, efectiva y competente. La falta de objeción al interrogatorio sugestivo del fiscal puede quizás parecernos un desacierto o error del letrado de la defensa si consideramos *a posteriori* todos los incidentes del juicio. Pero muy bien pudo ser una táctica conducente a la mejor defensa de los derechos del acusado ante el juzgador de los hechos. En todo caso, firme y reiterada jurisprudencia establece que las equivocaciones o errores del abogado de la defensa (ya sea éste un defensor público, un abogado de oficio o un abogado que ha sido escogido y remunerado por el propio acusado) no pueden ser invocados en apelación como fundamento para obtener una revocación del fallo o sentencia, en ausencia de mala fe, de fraude, de incapacidad física o mental, o de clara, indisculpable y grave incompetencia profesional del abogado que representó al apelante en el juicio. Cf. Nota, *Incompetent Counsel as Ground for New Trial in Criminal Cases*, 47 Colum. L. Rev. 115–122; Nota, *Incompetency of Counsel as a Ground for Attacking Criminal Convictions in California and Federal Courts*, 4 U.C.L.A. L. Rev. 400–419 (1955) y los casos allí citados. [4] Tercero, la prueba presentada para identificar el "paquete" que llevaba al salir de la casa no pudo lesionar en forma alguna los derechos fundamentales del acusado. La razón es sencilla: antes y después de la referida identificación del "paquete" se adujo evidencia directa e indudablemente admisible para establecer que se vio al acusado salir de la residencia escalada, que dicha residencia había sido violentada y que numerosos objetos habían sido sustraídos de la misma. Así. pues, habida cuenta de la demás prueba que presentó el ministerio público, la admisión del testimonio para identificar el paquete de objetos hurtados ni siquiera pudo resultar perjudicial para el acusado. Cf. *Pueblo* v. *Negrón*, 79 D.P.R. 296 (1956) y *Pueblo* v. *Lampón*, 78 D.P.R. 109 (1955).

■ El cuarto error que se atribuye al tribunal a quo consiste en haber rechazado " . . . la defensa de coartada, a pesar de que la prueba de El Pueblo no rebatió dicha defensa." Consta de autos que la única defensa interpuesta por el acusado fue la de coartada. Para probar que él se encontraba en otro lugar a la hora y fecha del delito imputado en la acusación, se presentó el testimonio del propio acusado y el de tres testigos más. Sin embargo, mediante las declaraciones de la dueña de la casa y de su hija, la prueba del ministerio público tendió a identificar al acusado como la persona que salió de la casa escalada con un bulto sobre su cabeza, a las ocho de la noche del día 17 de abril de 1955. Ambas lo vieron de frente a la luz que arrojaban tres bombillas encendidas dentro y fuera de la casa. Obviamente el tribunal de instancia no dio crédito a los testigos de la defensa y halló culpable al acusado a base de la prueba de cargo que es suficiente para rebatir la defensa de coartada. No encontramos base en los autos para intervenir con la apreciación que de la prueba hizo el tribunal sentenciador. Véanse *Pueblo* v. *Rosario*, 80 D.P.R. 318 (1958) y los casos allí citados.

■■ Sin embargo, el apelante arguye con empeño que " . . . casi al finalizar la prueba de la defensa, el juez de instancia tiene dudas sobre la presencia del acusado en el lugar de los hechos, duda que indefectiblemente tiene que producir la absolución del acusado. Empero, en abierta desviación del orden de la prueba llama de su propia iniciativa a la perjudicada para preguntarle si está ella segura si fue al acusado a quien vio salir de su casa la noche de autos. Su contestación disipó la duda del juzgador. Las circunstancias en que la perjudicada identificó al autor de los hechos en horas de la noche y mientras corría hacia unas bambúas, no contradijo . . . la declaración confiable de los testigos de la defensa." No podemos coincidir con ese criterio. En el turno de prueba del fiscal la dueña de la casa y su hija en forma clara y convincente identificaron al acusado como

el autor del escalamiento. Al terminarse la prueba de defensa el juez llamó a la silla testifical a la Sra. Justina Vélez Vda. de Vera y le hizo la siguiente pregunta: "¿Bajo la fe del juramento prestado por usted, usted está segura de que la persona que usted vio saliendo de su casa en la noche del . . . 17 de abril fue al acusado?" A eso contestó la testigo: "Sí, señor, Francisco Torres." Así pues, la dueña de la casa se limitó a reafirmar la declaración que había prestado anteriormente. Respecto a la actuación del tribunal sentenciador al reabrir el caso luego de haber El Pueblo terminado su prueba, a fin de preguntar a la dueña de la casa si ella estaba segura de que vio al acusado salir de su casa a las ocho de la noche del día 17 de abril de 1955, bastará decir que el magistrado tiene discreción, a instancia de parte y aun de oficio, para alterar el orden normal de presentación de las pruebas o para mandar a reabrir el caso, cuando así lo considere conveniente para el mayor esclarecimiento de los hechos o para el más seguro descubrimiento de la verdad. Nada hay en este caso que demuestre un abuso de tal discreción. Véanse *Pueblo* v. *García*, 78 D.P.R. 88, 89-90 (1955); *Pueblo* v. *Hernández*, 75 D.P.R. 907, 914 (1954); y *Pueblo* v. *Nieves*, 40 D.P.R. 384, 390-391 (1929).

 En el quinto y último señalamiento se queja el encausado de que se le declarara culpable de escalamiento en primer grado ". . . a pesar de que no se probó que el delito se hubiese cometido de noche." Admite que la frase "de noche" significa el período transcurrido entre la puesta y la salida del sol. Art. 411 del Código Penal, 33 L.P.R.A. sec. 1594. Pero sostiene que ". . . no se pudo precisar la hora en que entró el acusado a la casa, admitiendo, para estos propósitos, que hubiese él entrado o penetrado a la misma." Creemos que dicha contención está desprovista de méritos. La evidencia presentada por el ministerio fiscal demostró concluyentemente que doña Justina Vélez Vda. de Vera y su hija regresaron a su residencia a las ocho de la noche del día 17 de abril de 1955. En ese preciso momento

ambas vieron, a la luz que arrojaban tres bombillas encendidas dentro y fuera de la casa, que el apelante salía de allí con un bulto lleno de objetos hurtados. Más tarde comprobaron que se había arrancado una tabla de la pared de la cocina para así abrir la puerta y entrar en la casa. La residencia había quedado bien cerrada cuando ellas salieron para Ponce el día 16 de abril de 1955. Los únicos objetos hurtados en la casa (colchas, sábanas, frisas, trajes y ropa interior) se sacaron de un baúl y de una maleta que habían sido violentados. Al lado de la casa escalada había una bomba de gasolina. Además, aunque retirados de la residencia, varios vecinos vivían en esos alrededores. La casa se encuentra a orillas de una carretera, en el barrio Garzas, cerca del pueblo de Adjuntas. Tomamos conocimiento judicial, como sin duda lo hizo el tribunal de instancia, de que la puesta del sol ocurrió en Adjuntas antes de las 6:45 P. M. en ese día 17 de abril de 1955.

Apreciados en conjunto, los hechos y circunstancias antes reseñados tienden a demostrar, si tenemos en cuenta las inferencias que de ellos pueden derivarse, que el delito de escalamiento en este caso se cometió después de haber oscurecido. Había transcurrido más de una hora y cuarto desde la puesta del sol cuando la dueña y su hija vieron al acusado salir de la casa. Obviamente, registrar la casa y violentar un baúl y una maleta no son operaciones que tomen mucho tiempo. Y sin duda hay que dar por sentado que el acusado salió de la casa tan pronto como le fue posible. Por otro lado, la experiencia indica que para entrar en una casa a orillas de la carretera arrancando una tabla de la pared de la cocina, el acusado tuvo que esperar la caída de la noche, a fin de que los transeúntes y vecinos no lo oyeran ni lo vieran. Por último, de haber entrado durante el día el acusado tampoco hubiese encendido las luces de la sala. Frente a toda esa prueba circunstancial, no hay ninguna evidencia de que el acusado entró de día, ya que su única defensa fue la de coartada. [9] Por tanto, aunque no se probó mediante evi-

dencia directa la hora exacta en que el acusado entró en la casa, la evidencia circunstancial que tuvo ante sí el tribunal a quo es suficiente para sostener su determinación de que ello sucedió en horas de la noche. No hay razón para que en apelación alteremos esa conclusión del juzgador de los hechos. Véanse *Pueblo* v. *Rosado*, 79 D.P.R. 25, 26 (1956); *People* v. *Wheat*, 301 P.2d 263 (Cal. 1956); *People* v. *Barrios*, 199 P. 58 (Cal. 1921) y *Clark* v. *State*, 143 S.W.2d 378 (Tex. 1940).[2] [10] La determinación de la hora en que se comete un escalamiento depende casi siempre de inferencias razonables basadas en evidencia circunstancial. Es una cuestión que toca resolver al juzgador de los hechos, ya sea éste el jurado o el juez de instancia. [11] La función del tribunal en apelación se limita a considerar si hay evidencia que racionalmente sostenga la declaración de culpabilidad, la cual necesariamente implica una determinación de que el delito se cometió de noche si el veredicto es en primer grado. Como se ha dicho reiteradas veces, la regla de que el acusado tiene el beneficio de la duda respecto al grado del delito (art. 237 del Código Penal, 34 L.P.R.A. sec. 716) sólo entra en juego cuando se somete el caso al juzgador de los hechos, ya sea éste el jurado o el juez de instancia. Pero una vez que se halla culpable al encausado, determinando como cuestión de hecho que el delito se cometió de noche, el único criterio en apelación es la suficiencia racional de la evidencia. Véase *People* v. *Daugherty*, 256 P.2d 911 (Cal. 1953) y los casos allí citados. Cf. *United States* v. *Sherman*, 171 F.2d 619 (C.A. 2, 1948); *United States* v. *Spagnuolo*, 168 F.2d 768 (C.A. 2, 1948); y *United States* v. *Feinberg*, 140 F.2d 592 (C.A. 2, 1944).

Deseamos hacer constar aquí nuestro reconocimiento al Lic. Elí B. Arroyo, nombrado abogado de oficio en 11 de

---

[2] Véanse además: *People* v. *Cota*, 190 P. 473 (Cal. 1920); *Gray* v. *State*, 9 N.W.2d 68 (Wisc. 1943); *People* v. *Shafer*, 119 P. 920 (Cal. 1911); *People* v. *Lowrie*, 87 P. 253 (Cal. 1906); y *People* v. *McCarty*, 48 P. 984 (Cal. 1897).

mayo de 1959, por su hábil y desinteresada defensa de los derechos del acusado apelante ante este Tribunal Supremo.

*Debe confirmarse la sentencia apelada.*