266

El Pueblo de Puerto Rico, demandante y apelado, v. Samuel Meléndez Martínez C/P Julio Rodríguez Ramírez, acusado y apelante.

Número: CR-62-142     Resuelto: 23 de octubre de 1962

*Samuel Meléndez Martínez, pro se; Eduardo López Dosal,*
abogado del apelante; *J. B. Fernández Badillo, Procurador
General* y *Peter Ortiz, Procurador General Auxiliar,* abogados de El Pueblo.

Sala integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Hernández Matos y Santana Becerra.

PER CURIAM: Samuel Meléndez Martínez fue acusado ante la Sala de San Juan del Tribunal Superior por un delito de Tentativa de Escalamiento en Primer Grado, consistente en que durante las horas de la noche del 1 al 2 de agosto de 1959, en Santurce, P. R., ilegal, voluntaria y maliciosamente y con la intención de cometer hurto o ratería, trató de penetrar en la residencia del señor Pedro Acosta Rivera, no habiéndolo logrado por la intervención de otras personas. Celebrado el juicio ante jurado, fue convicto del delito que se le imputó y sentenciado a cumplir de uno a cinco años de presidio con trabajos forzados.

Apeló ante nos y una vez elevados los autos, designamos al Lic. Eduardo López Dosal para que representara en el recurso al acusado apelante y le ofreciera la asistencia legal necesaria a fin de que pudiera ejercer plenamente su derecho de apelación. No obstante esa designación, el acusado, por su propio derecho, presentó un llamado alegato. Poco después, dicho letrado presentó su alegato en apoyo del recurso, realizando en el mismo una loable labor en favor de su defendido. El Procurador General ha contestado ambos alegatos.

En el del letrado del acusado-apelante se imputa la comisión de dos errores, a saber: (1) la nulidad de la sentencia por no haberse probado la intención específica de cometer hurto o ratería, y (2) el haberse trasmitido al jurado cierta instrucción sobre la intención. ■

1. Como dijimos en *Pueblo* v. *Palau,* 80 D.P.R. 364, 383 (1958) "como condición subjetiva que es, una intención es-

pecífica se manifiesta por los medios, forma y circunstancias en que se realiza un acto."

La declaración del testigo principal presentado por El Pueblo, nombrado José Antonio Maldonado, demostró los siguientes hechos: que dicho testigo en la noche del 1 al 2 de agosto de 1959, en Santurce, P. R., actuaba como celador nocturno de varias residencias, entre las cuales estaba la del señor Pedro Acosta Rivera; que como a las dos y quince minutos de la madrugada del 2 de agosto, estando cerca de esa residencia oyó un perro ladrar; con una linterna eléctrica alumbró el interior del patio de esa residencia y vio al acusado doblando o "forzando una celosía de una ventana" de tipo Miami, con un pedazo de palo, de una casita de la residencia utilizada para guardar una máquina de lavar y "cosas así"; que entonces llamó a la señora de Acosta y ésta "se levantó y prendió la luz"; que en seguida trató de coger al acusado pero éste se fue corriendo por la calle; en ese momento llegó al sitio la policía en un vehículo y fue enterada por él de lo ocurrido; después de perseguir al acusado la policía logró arrestarlo. Con excepción del hecho de observar al acusado forzar la ventana, su declaración fue corroborada por los testimonios de la señora Luz María Baldrich de Acosta y por el policía Arturo Pagán. ▪

Como bien expone El Pueblo en su alegato: "el acusado fue sorprendido en el patio de una residencia que no era la suya (a las dos y cuarto de la madrugada) mientras estaba tratando de forzar una ventana que estaba en buenas condiciones antes de esa noche y que estaba doblada después de escaparse el apelante. Éste no explicó su presencia en dicho sitio, sino por lo contrario negó haber entrado al patio. La prueba fue contradictoria y el jurado le dio crédito a la del Pueblo, de la cual pudo claramente el jurado hacer inferencias razonables sobre la existencia de una intención específica de cometer hurto o ratería; *Pueblo* v. *Torres*, 81 D.P.R. 678 (1960); *Pueblo* v. *Rivera*, 67 D.P.R. 297 (1947) y *Pueblo* v. *Rosado*, 79 D.P.R. 25 (1956). ▪

No estimamos necesario que se probara que en la casa cuya ventana fue forzada por el acusado "hubieran bienes con determinado valor pecuniario." De la prueba resultó que en la misma se guardaban juguetes de una niña de la casa y una máquina para lavar ropas. No estaba vacía como supone el apelante. Se dice en 2 Wharton's *Criminal Law and Procedure*, sec. 439, pág. 63.

"In a prosecution for common law burglary or a statutory redeclaration of common law burglary, it is immaterial that the building or the part of the building where the defendant broke and entered did not contain any property or the property which he sought. This necessarily follows from the fact that the offense is completed at the moment that the defendant breaks and enters, without more, and without regard to whether he carries out his intention." ■

2. La instrucción sobre la intención específica fue trasmitida correctamente. La encontramos ajustada a derecho, imparcial y, en ciertos aspectos, favorable al apelante.

Los casos de Mize, Landman, Flores, Jones, Miller, Brown y Snyder,[1] todos de California, citados por el letrado del apelante, se refieren a atentados para cometer asesinatos, con excepción del de Flores. Los hemos estudiado detenidamente y en nada abonan su contención sobre nulidad de las instrucciones. En la mayoría de ellos se sostuvo que en los casos de tentativa para cometer asesinato no era suficiente la instrucción general al jurado de que se presume que toda persona intenta la consecuencia ordinaria de un acto cometido por ella voluntariamente.

El caso ded *Flores* es uno sobre escalamiento. No hubo prueba directa de la penetración del acusado en la residencia de un tal Bandoni en el condado de Fresno. Pero se había ocupado en su poder un reloj y varias monedas que

---

[1] *People* v. *Mize*, 80 Cal. 41; *People* v. *Landman*, 103 Cal. 577; *People* v. *Flores*, 86 Cal. App. 235; *People* v. *Jones*, 160 Cal. 358; *People* v. *Miller*, 2 Cal. 2d 527; *People* v. *Brown*, 27 Cal. App. 2d 612, *People* v. *Snyder*, 15 Cal. 2d 706.

faltaron de esa residencia.    No dio una razonable explicación de la posesión de esos objetos.    La sentencia condenatoria fue confirmada.

Nuestra decisión en *Pueblo v. Marchany Santiago*, resuelto el 20 de octubre de 1961, sobre tentativa de escalamiento en primer grado, más bien perjudica que favorece al acusado.    Allí confirmamos la sentencia y en parte dijimos:

"Se señala que la prueba fue insuficiente ya que no se demostró 'la intención específica' de cometer hurto o ratería o cualquier otro delito grave.    El testimonio de los testigos de cargo fue al efecto de que los acusados fueron sorprendidos por la ronda policiaca, a la una y media de la madrugada, mientras intentaban descerrajar una ventana de un establecimiento conocido con el nombre de 'Agua Marina', y que según la declaración de su propietario había sido debidamente clausurado la noche anterior, a pesar de lo cual la ventana estaba violentada, con un listón roto; que al ser sorprendidos, uno de los apelantes se dio a la fuga y el otro fue capturado; que al día siguiente, Marchany le imputó a García 'que estaba tratando de escalar el establecimiento' (T.D., pág. 34) y éste permaneció callado y no formuló negativa o protesta alguna.    La prueba de la defensa tendió a establecer que ambos acusados estaban guareciéndose de la lluvia en otro negocio llamado 'Joe's Bar' que está localizado cerca del 'Agua Marina'.    En *Pueblo v. Rosado,* 78 D.P.R. 436, 441 (1955) indicamos que en el delito de escalamiento la intención desempeña un papel de importancia, 'la determinación de cuya existencia debe dejarse enteramente al juzgador de los hechos'.    En el presente caso el jurado dirimió el conflicto de la prueba en contra de los acusados, y la del Pueblo que indudablemente mereció crédito señala la intención que tuvieron los acusados en la comisión de los hechos del delito que resultó frustrado por la oportuna intervención de los agentes.    No debe olvidarse que la intención es una condición subjetiva que sólo se manifiesta por los medios, forma y circunstancias en que se realiza un acto.    *Pueblo v. Palou,* 80 D.P.R. 364 (1952); *Pueblo v. Tribunal,* 74 D.P.R. 838, 855 (1953); *Pueblo v. Ramírez,* 41 D.P.R. 747 (1931); cfr. *Pueblo v. Pérez,* 48 D.P.R. 725 (1935)."

En el alegato preparado por el propio acusado apelante éste también imputa la comisión de dos errores. El primero, en esencia, es igual al que su letrado señala y discute como "Primer Error", o sea, ausencia de factores en la prueba para establecer la intención específica de cometer hurto o ratería. ■ .

El segundo plantea la improcedencia de una pregunta que le formuló un jurado cuando él declaraba como su propio testigo. Del récord taquigráfico aparece que el acusado declaró como testigo en su propia defensa y que, a preguntas de su abogado, entre otras cosas, expuso:

". . . Como al cruzar un bloque más, se presentó el 'jeep' de la Policía con aquí el Sargento presente, Modesto Ortiz, que me detuvieron. Y trataron de detenerme y yo no me dejé detener, no porque había cometido un delito, sino porque yo al mismo tiempo había cometido un delito al pelear con ese hombre [se refería al sereno que lo había sorprendido esa noche] sino yo huía al Policía porque yo estaba cumpliendo una libertad bajo palabra que automáticamente yo fuera arrestado y además, ir a perder la libertad bajo palabra, iba a quedar preso de cualquier manera." T.E. pág. 31.

Luego se le preguntó por su abogado, y contestó, como sigue:

"P. ¿Dice usted que si la policía lo arrestaba usted corría el riesgo de que fuera a cancelársele la libertad bajo palabra y finalmente fue arrestado por el policía?

"R. Yo bebía anteriormente y sabía que estaba violando la regla pero no en un caso como ese que mayormente sabía que ahí me estaba perjudicando más de la cuenta porque ya era un caso que la Policía tenía que intervenir obligatoriamente.

"P. ¿Por eso usted corrió?

"R. Corrí."

En la repregunta, al interrogarle el Fiscal sobre el motivo que tuvo para no decirle al sargento algo sobre lo ocurrido esa noche, contestó:

"No le mencioné; ellos me registraron y no podía mencionarle que estaba bajo palabra."—T.E. pág. 36.

Volvió el abogado del acusado a preguntarle: "¿No se lo

mencionó porque estaba en libertad bajo palabra? y contestó: "Sí, señor." Poco después uno de los jurados preguntó al acusado:

>"¿Testigo, por qué delito usted estaba en libertad bajo palabra?"

Contestó:

>"Por un delito de Atentado para Cometer Asesinato."
>—T.E. pág. 37.

Sostiene el propio acusado apelante que esa pregunta le perjudicó "y su resultado fue el no haber gozado de una deliberación imparcial como lo demanda la ley habiendo pesado más el hecho de ser un presidiario en libertad bajo palabra que la prueba escasa aportada por el Ministerio Fiscal." ■

Bajo las circunstancias concurrentes no consideramos ese incidente como motivo para revocar el fallo apelado. Fue el propio acusado, a repetidas preguntas de su abogado, quien trajo a colación, varias veces, el hecho de que se encontraba en libertad bajo palabra. Al sentarse a declarar se convirtió en un testigo sujeto a las mismas reglas y procedimientos que cualquier otro testigo. Todo el contenido de su declaración estaba sujeto a ser aclarado e investigado. *Pueblo v. Archeval*, 74 D.P.R. 512, 515, 516 (1953). ■

Por otro lado estimamos suficiente para sostener el veredicto la prueba que antes de esas declaraciones había presentado en su contra El Pueblo. No se trataba de una acusación por delito subsiguiente. Para contradecirlo el Fiscal podía ofrecer en evidencia su anterior convicción por un delito grave. Cualquier posible perjuicio lo subsanó el juez al dar, entre otras, la siguiente instrucción:

>"Naturalmente, habiendo surgido esta cuestión el problema de si él violó o no violó real y efectivamente una de las condiciones por la cual estuviera en libertad, si se le canceló o no se le canceló con razón, es un problema distinto completamente del problema que está bajo la consideración de ustedes en el día de hoy. Lo mismo lo que dijo del delito de Atentado para Cometer Asesinato, es un problema que no está en la consideración de ustedes en el día de hoy. Ustedes deben resolver el caso

de lo que se le imputa a él de los hechos del 1 al 2 de agosto de 1959, no por otras cosas malas que él haya hecho en otra época de su vida." T.E. pág. 49.

*No consideramos cometidos los errores señalados y discutidos tanto en el alegato del propio acusado apelante como en el de su letrado, por lo que deberá confirmarse la sentencia apelada.*