46

EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.*
HÉCTOR SORIANO RODRÍGUEZ, acusado y apelante.

*Número:* CR-64-239     *Resuelto:* 15 de marzo de 1965

*Olga Cruz Jiménez,* abogada designada por el Tribunal Supremo
para ofrecer asistencia legal al acusado en apelación; *J. B.*

*Fernández Badillo, Procurador General,* y *Manuel Tirado Viera, Procurador General Auxiliar,* abogados de El Pueblo.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Rigau y Dávila.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del Tribunal.

El Fiscal acusó al apelante de un delito de Escalamiento en Primer Grado, consistente en que durante las horas de la noche del 10 al 11 de mayo de 1963 penetró en la Mueblería Mendoza sita en Caguas, con la intención de cometer hurto o ratería. Celebrado un juicio por tribunal de derecho, fue declarado convicto de dicho delito y sentenciado a cumplir de uno a dos años de presidio.

En este recurso señala la comisión de tres errores, en el primero de los cuales sostiene que "el Pueblo no probó la intención específica del acusado de cometer hurto o ratería" y en el segundo "que el Pueblo no probó la penetración ilegal en el establecimiento".

■ Convenimos con el apelante en que el Pueblo venía obligado a probar esos dos elementos esenciales del delito de escalamiento. *Pueblo* v. *Torres,* 81 D.P.R. 678 (1960). Corresponde pues resolver si la prueba los dejó establecidos. Según la resume correctamente el Procurador General, es como sigue:

" . . . El testigo de cargo Juan Carrasco declaró que en la noche del 10 de mayo de 1963 vio cuando el acusado se paró frente a la Mueblería Mendoza, le dio una patada al cristal, se dobló y cogió un objeto y luego se dirigió bastante ligero doblando por la calle Doctor Rufo hacia abajo. (T.E., pág. 4.) A preguntas de la defensa este testigo especificó que había salido detrás del acusado de un establecimiento donde se hallaban ambos; que iba detrás de éste más o menos a veinte pies de retirado; que vio cuando el acusado rompió el cristal y cuando 'se dobló y metió la mano por el hueco del cristal,' pero que no pudo ver lo que cogió, pues 'se dobló muy rápido y dobló por la calle . . .' en dirección

del hospital; que después (el testigo) fue al cuartel y allí se recibió una llamada del hospital; que más tarde le llevaron al hospital y vio allí al acusado. (T.E. págs. 6–7.) En el examen redirecto del fiscal dijo el testigo que el acusado 'se dobló hacia la vitrina y de dentro de la vitrina sacó el objeto'. (T. E. pág. 8.)

El agente del orden público José M. Torres dijo que fue él quien investigó los hechos imputados al acusado; que al personarse en la Mueblería Mendoza en la noche en que se cometió el delito, encontró un cristal roto; que estando allí le llamaron del hospital porque había un hombre herido 'que presentaba partículas de cristal' y que encontró a 'este muchacho [el acusado] que mostraba heridas en el brazo y en el cuerpo;' que éste alegó entonces que una pandilla en la salida de San Juan le había caído encima; que '[h]abía un testigo ocular y lo identificó;' que ante el Juez Donato admitió que había roto el cristal, pero que no se había llevado nada. (T.E. págs. 8–10.)

El testimonio de Carmen García Velázquez, encargada de la Mueblería Mendoza de Caguas, fue en el sentido de que el día 10 de mayo de 1963 había cerrado dicho establecimiento alrededor de las cinco y media a seis de la tarde, dejando en buen estado los cristales de la vitrina; que al otro día encontró que el cristal estaba roto y faltaba un radio modelo 356, marca Matchester, que estaba en la vitrina, cuyo valor era de $75.00." (T.E. págs. 10–11.)

En el citado caso de *Pueblo* v. *Torres*, supra, resolvimos que tanto la penetración ilegal como la intención específica de cometer hurto o ratería son hechos que pueden ser demostrados mediante evidencia circunstancial.

Sin embargo de acuerdo con la prueba, el apelante después de romper la vitrina metió la mano por el hueco del cristal y de dentro de la vitrina sacó un objeto que por el testimonio de la encargada de la mueblería hay que inferir que fue el radio que faltó. De suerte que la intención de cometer hurto o ratería quedó plenamente establecida. La prueba circunstancial indica que de hecho cometió el hurto de un radio.

Se sostiene además, que no se probó la penetración ilegal del apelante en el establecimiento. Se arguye que la única prueba que tiende a probar el hecho de la penetración es el

testimonio de Juan Carrasco quien "declaró que el acusado-apelante, después de darle una patada al cristal, se dobló y cogió un objeto". "Este testimonio—sigue argumentando—no conecta al acusado-apelante con el hecho de coger objetos de la vitrina de la mueblería, ni establece si en efecto el acusado hizo algún movimiento para introducir su cuerpo o parte de su cuerpo en el establecimiento."

El apelante apoya su argumento en una premisa errónea. Si bien el testigo Juan Carrasco declaró en el interrogatorio directo en la forma que expresa el apelante, no es menos cierto que en el contrainterrogatorio dicho testigo contestó como sigue:

"P. Cuando usted lo vio doblarse, se dobló hacia abajo para coger algo?

R. *Sí, se dobló y metió la mano por el hueco del cristal.*

P. Ud. declaró antes de hoy en Fiscalía?

R. Sí.

P. Ud. le dijo al Fiscal que había metido la mano por el hueco del cristal?

R. No se lo dije porque no me lo preguntó. El no me hizo esa pregunta. *El metió la mano.*" (Énfasis suplido.) (T.E. págs. 6–7.)

■ La penetración ilegal en el edificio quedó consumada cuando el apelante introdujo su mano por el hueco del cristal roto de la vitrina.

Para que quede consumada la penetración ilegal en la comisión de un delito de escalamiento, no es necesario que todo el cuerpo del acusado penetre en el edificio, basta como en este caso, que introduzca una mano. *People* v. *Pettinger,* 271 Pac. 132; *People* v. *Allison,* 253 Pac. 318; *People* v. *Massey,* 16 Cal. Rptr. 402; *Commonwealth* v. *Lewis,* 191 N.E.2d 753; *State* v. *Tierney,* 371 S.W.2d 301; *People* v. *Martone,* 101 P.2d 537; 21 So. Cal. L. Rev. 84.

■ Se alega además que el tribunal sentenciador cometió error al descartar totalmente la defensa del acusado. La defensa consistía en que dicho acusado se encontraba en

estado de embriaguez el día de los hechos y que por lo tanto "no le era permitido formar la intención criminal específica que se requiere para cometer el delito de Escalamiento en Primer Grado". Argumenta que el Juez de instancia debió aplicar, por analogía, la doctrina del caso de *Pueblo* v. *Alsina*, 79 D.P.R. 46 (1956), en el sentido de que una vez que en la causa existe prueba capaz de crear duda sobre la sanidad mental del acusado en el instante de perpetrar el acto criminal, el ministerio público viene obligado a probar el sano juicio del acusado.

El Art. 41 del Código Penal (33 L.P.R.A. sec. 87) dispone que ningún acto cometido por una persona en estado de voluntaria embriaguez es menos criminal por haberse cometido en tal estado. Dispone además que siempre que la existencia real de algún fin, motivo o intento determinado fuere elemento indispensable para constituir alguna clase o grado de delito especial, el jurado podrá tomar en consideración el hecho de que el acusado se hallaba entonces ebrio, al determinar el fin, motivo o intento con que se cometió el acto.

El acusado intentó establecer su estado de embriaguez mediante su propio testimonio. El Juzgador de los hechos no le dio crédito y con sobrada razón. Declaró el acusado que la noche de los hechos estaba tomando en un negocio que queda para la salida de Cayey; que allí vio al testigo Carrasco tomando también y que habló con él; que cuando rompió el cristal de la vitrina de la mueblería eran como las tres de la mañana; que la vitrina estaba completamente alumbrada; que en ese sitio no había más gente a esa hora; que al romper la vitrina se dobló para verse una herida que se había dado en la rodilla; que no metió la mano dentro de la vitrina; que un cristal le cayó encima de la mano y se la partió; que no se llevó ningún radio de la vitrina, y que como estaba se dirigió al hospital a curarse.

Este testimonio, con la rica exposición de detalles que contiene, si algo demuestra es que el acusado no se encontraba

en el momento de los hechos inhibido de sus facultades mentales al extremo de que no pudiera formar una intención específica de realizar determinado acto.

■ En *Pueblo* v. *Rosado*, 78 D.P.R. 436 (1955), citando a *Pueblo* v. *Rivera*, 70 D.P.R. 570 (1949), dijimos a la página 440:

" 'La regla adoptada en aquellas jurisdicciones donde prevalecen disposiciones de ley idénticas o similares a la contenida en el artículo 41 de nuestro Código Penal es que la embriaguez—voluntaria—tiene que ser de tal grado o carácter que inhiba en el acusado su facultad mental para formar la intención específica requerida por el Código para la convicción de un delito—o grado del mismo—en el cual se requiere tal intención específica, y que *la determinación de ese hecho es esencialmente una para el jurado o la corte juzgadora,'* citando innumerables casos del continente. (Bastardillas nuestras.)"

■ Agregamos en el citado caso de *Rosado*, supra, que como en el delito de escalamiento la intención desempeña un papel de importancia, su existencia debe dejarse enteramente al juzgador de los hechos. Precisamente el juez, quien fue el juzgador de los hechos en este caso, refiriéndose a la declaración del acusado se expresó así: "No le damos crédito de que estaba borracho. Tan no estaba borracho que él mismo dice que no cogió ningún radio. Si tenía claridad mental para decir que no cogió ningún radio, pues no estaba borracho."

*Se confirmará la sentencia apelada.*