EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* CÁNDIDO PACHECO BETANCOURT, acusado y apelante.

*Número:* CR-64-370     *Resuelto:* 16 de septiembre de 1965

*Enrique González, Luis E. Gandía Argüelles* y *Francisco Abréu
Castillo,* abogados del apelante; *J. B. Fernández Badillo,
Procurador General,* y *Américo Serra, Procurador General
Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

Contra el apelante Cándido Pacheco Betancourt se formuló la siguiente acusación:

"El referido acusado, ·Cándido Pacheco Betancourt, allá en o por el 18 de septiembre de 1962 y en Trujillo Alto, P.R., . . . ilegal, voluntaria y maliciosamente, penetró durante las horas de la noche en la residencia de Gloria Andino Sánchez, con la intención criminal de cometer violación en la persona de la referida Gloria Andino Sánchez."

Se le celebró juicio por jurado y éste rindió veredicto de culpabilidad por el delito de escalamiento en primer grado. Se le condenó a la pena de dos (2) a cinco (5) años de presidio con trabajos forzados.

Señala como errores para sostener su recurso que el veredicto es contrario a derecho porque 1) la prueba presentada fue contradictoria e inverosímil y por tanto debió crear duda razonable en el ánimo del jurado y 2) porque ésta establece que el acusado estaba en estado de embriaguez y debió por tanto concluirse su incapacidad para concebir la intención específica requerida en el delito.

Debemos examinar primeramente si la prueba practicada en juicio es suficiente para sostener que ha quedado probado fuera de toda duda razonable la penetración ilegal del acu-

sado en uno de los lugares mencionados en el Art. 408 del Código Penal(¹) y que ésta se llevó a cabo con la intención específica de cometer cualquier delito grave. *Pueblo* v. *Torres*, 81 D.P.R. 678, 681 (1960); *Pueblo* v. *Laboy Díaz*, 90 D.P.R. 187 (1964); *Pueblo* v. *Soriano Rodríguez*, 92 D.P.R. 46 (1965).

La prueba de cargo consistió del testimonio de la perjudicada Gloria Andino Sánchez y de Cándida Yera Vicenty, una vecina, y de un certificado médico expedido el 20 de septiembre de 1962 por el doctor Grovas y que expresa lo siguiente:

"Que certifico que Gloria Andino Sánchez fue admitida al Hospital de Distrito de Bayamón, referida por el Centro de Salud de Trujillo Alto; que la paciente presenta una abrasión en la región deltoides derecha y en el tercio medio, en el tercio inferior y brazo derecho; que no se hizo investigación o examen vaginal por razón de que la paciente no era virgen y sí tenía dos hijos."

La testigo Gloria Andino Sánchez declaró, en síntesis, que el 18 de septiembre de 1962, como a las once de la noche mientras se encontraba en su casa con sus dos nenes; que sintió un alboroto en la puerta de la casa; que la puerta cierra con un pestillo que tiene una cadena; que escuchó que alguien tocaba en la puerta y la llamaba diciéndole: "Gloria, Gloria, ábreme"; que entonces le dieron un "estremezón" bastante fuerte a la puerta y ésta se abrió; que al abrir la puerta el acusado entró en la casa y la empuñó por los brazos; que estuvieron forcejeando un rato hasta que el acusado la tiró en el piso; que mientras forcejeaban el acusado le decía: "Este, mira Gloria, Gloria te voy a violar;

---

(¹) El Art. 408 del Código Penal (33 L.P.R.A. sec. 1591) define el delito de escalamiento de la siguiente manera:

"Toda persona que entrare en una casa, aposento, habitación, casa de vecindad, taller, almacén, tienda, granero, establo, dependencia, u otro edificio, pabellón, embarcación, carro o vagón, con el propósito de cometer hurto o ratería, *o cualquier delito grave* será culpable de escalamiento." (Subrayado nuestro.)

te voy a violar si no te 'entriegas' y entonces voy a donde la nena"; que después que la tiró al suelo el acusado siguió la lucha con ella hasta que la violó; que eso fue como a las once y como a la media hora todavía estaba encima de ella; que el acusado no se levantaba de encima de ella "de tan borracho que estaba"; que no puede hablar bien debido a los apretones que el acusado le dio en la garganta; que ella pedía auxilio diciendo: "Caridad, caridad; Cándido Pacheco está metido aquí. Socorro, socorro"; que al fin logró zafarse y caminó hacia la puerta pero entonces el acusado la agarró otra vez para abusar con ella; que logró caminar hacia afuera y se cayó encima de unas piedras; que siguió bajando poco a poco y llamó a Pablo Pacheco, tío del acusado, y le dijo: "mire, allá está Cándido, sáquenlo de la casa que me violó. Ustedes váyanse y sáquenlo; ustedes son tíos"; que los tíos dijeron que no era él y ella siguió gritando: "auxilio, auxilio; Doña Candita, venga acá, Cándido Pacheco me violó"; que entonces vino Doña Candita y cogieron la nena. Dijo, además, que el 18 de octubre de 1962 el acusado fue a su casa a sobornarla con treinta dólares para que "no le tirara en este mismo caso" y ella le tiró con una olla.

Cándida Yera Vicenty declaró, en lo pertinente, que la noche de los hechos se encontraba en su casa durmiendo cuando sintió que Gloria Andino gritaba desesperadamente "que le sacaran a Cándido Pacheco de allí dentro porque la había violado" y que le quería violar la niña; que entonces ella prendió una bombilla y escuchó que Gloria Andino decía: "corran, corran, que me coge la niña, me coge la niña". Declaró, además, que al otro día habló con Gloria Andino y pudo notar que tenía la voz ronca.

La defensa presentó el testimonio del policía Ángel Manuel Rivera quien declaró, en lo pertinente, que participó en la investigación de la querella que culminara en este proceso, que pudo observar la puerta de la casa de la perjudicada al día siguiente y que ésta estaba en buen estado. La

Sra. Hilda Mercedes Ruiz, quien vivía entonces con el acusado, declaró que la noche de los hechos el acusado se encontraba en su casa acostado y viendo televisión; que no salió en toda la noche. El acusado Cándido Pacheco Betancourt dijo que nunca ha estado en casa de Gloria Andino, que la noche del 18 de septiembre de 1962 se encontraba en su casa y que no se encontraba en estado de embriaguez.

■ La prueba que tuvo ante sí el jurado es suficiente para rendir un veredicto de culpabilidad. "La evidencia directa de un testigo que merezca entero crédito, es prueba suficiente de cualquier hecho. . .". Ley de Evidencia, Art. 18 (32 L.P.R.A. sec. 1661); *Pueblo* v. *Cortés del Castillo*, 86 D.P.R. 220 (1962). Si bien en el testimonio de la perjudicada se advirtieron algunas contradicciones, éstas no fueron sobre cuestiones fundamentales sino más bien sobre sucesos posteriores a los hechos delictivos tales como si la vecina vino a casa de la perjudicada la misma noche o al día siguiente o si la puerta de la casa fue arreglada antes o después que el policía fuera a investigar, que si bien pudieran haber afectado la credibilidad que mereciera el testigo. Ley de Evidencia, Art. 162 (32 L.P.R.A. sec. 1679), no obliga al jurado a rechazar el resto del testimonio. Correspondiendo al jurado por ley la facultad de juzgar sobre la credibilidad de los testigos así como de dirimir cualquier otro conflicto en la prueba, su determinación no será alterada en apelación a menos que se demuestre que éste se ha excedido en sus facultades. *Pueblo* v. *Aletriz*, 85 D.P.R. 646 (1962); *Pueblo* v. *Barreto Pérez*, 85 D.P.R. 752 (1962).

■ No se cometió el segundo error. La prueba de embriaguez surgió de la declaración de la perjudicada. El acusado no presentó prueba en ese sentido. Su defensa consistió en establecer una coartada. Como de la prueba de cargo surgía que el acusado estaba en estado de embriaguez el juez al instruir al jurado le manifestó que "si entendiesen ustedes por las pruebas, que la noche de la ocurrencia de estos hechos,

según se alega en la acusación, el acusado efectivamente se emborrachó voluntariamente y que estaba en estado de ebriedad voluntaria y que en ese estado de ebriedad voluntaria penetró a esta casa de Gloria Andino Sánchez, pero ustedes fuesen del criterio de que por razón de esa ebriedad, de que la misma era de tal naturaleza que le impedía a él formar la intención específica de violar, de penetrar con la intención específica de violar a Gloria Andino Sánchez; o tuviesen ustedes duda razonable y fundada sobre eso . . . es el deber de ustedes devolver al tribunal un veredicto absolviendo libremente al acusado".

Aunque la embriaguez voluntaria puede ser un elemento del cual pueda inferirse la ausencia de una intención específica (Código Penal, Art. 41, 33 L.P.R.A. sec. 87) (²), elemento esencial en el delito de escalamiento, la determinación de este hecho es para el jurado. *Pueblo* v. *Rosado*, 78 D.P.R. 436 (1955).

*Se confirmará la sentencia apelada.*

---

(²) Dispone así el citado artículo:

"Ningún acto cometido por una persona en estado de voluntaria embriaguez es menos criminal por haberse cometido en tal estado. Pero siempre que la existencia real de algún fin, motivo o intento determinado fuere elemento indispensable para constituir alguna clase o grado de delito especial, el jurado podrá tomar en consideración el hecho de que el acusado se hallaba entonces ebrio, al determinar el fin, motivo o intento con que cometió el acto."