EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>Recurrido<br><br>v.<br><br>Raymond Casillas Díaz; Zaida M. Torres Martínez<br><br>Peticionarios | Certiorari<br><br>2014 TSPR 28<br><br>190 DPR ____ |

Número del Caso: CC-2013-144

Fecha: 26 de febrero de 2014

Tribunal de Apelaciones: Región Judicial de Fajardo

Abogado de la Parte Peticionaria:

> Lcdo. Daniel Rivera Hernández
> Lcdo. Jaime Pérez Valentín
> Lcdo. José H. Pérez Frontera

Oficina de la Procuradora General:

> Lcda. Margarita Mercado Echegaray
> Procuradora General
>
> Lcda. Tanaira Padilla
> Subprocuradora General
>
> Lcdo. Ricardo Alegría Pons
> Procuradora General Auxiliar

Materia: Derecho Penal – Suficiencia de la prueba; elemento subjetivo de intención requerida para el delito de escalamiento (Arts. 203 y 204 del Código Penal de 2004)

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


*Certiorari*

El Pueblo de Puerto Rico

    Recurrido

                CC-2013-0144

      v.

Raymond Casillas Díaz; Zaida M.
     Torres Martínez

    Peticionarios


Opinión del Tribunal emitida por el Juez Asociado señor Rivera García


En San Juan, Puerto Rico, 26 de febrero de 2014.

En esta ocasión tenemos la encomienda de examinar si el Ministerio Público cumplió con su responsabilidad probatoria de demostrar la culpabilidad de los peticionarios más allá de duda razonable. Particularmente, el recurso de autos nos brinda la oportunidad de expresarnos sobre el delito de escalamiento y aclarar los parámetros fácticos y legales que rigen su consumación conforme a los Arts. 203 y 204 del derogado

Código Penal de Puerto Rico de 2004.[1] En ese contexto, este petitorio nos permite dejar palmariamente establecido en qué consiste el elemento subjetivo de intención requerido para el delito de escalamiento.

La adecuada atención de la controversia que nos ocupa exige que expongamos los antecedentes fácticos e incidentes procesales de mayor relevancia, así como el estado de derecho aplicable. Empero, adelantamos que luego de estudiar con estricto rigor los alegatos de las partes y la transcripción del juicio en su fondo, revocamos parcialmente la sentencia recurrida en cuanto a las condenas por los delitos de escalamiento agravado y alteración a la paz. Únicamente confirmamos respecto al delito de agresión menos grave.

---

[1] Arts. 203 y 204 de la Ley Núm. 149-2004 (33 L.P.R.A. ant. secs. 4831 y 4832). Los hechos que originaron el recurso de auto tuvieron lugar durante la vigencia del Código Penal de 2004, por lo que haremos referencia a dicho cuerpo legal para disponer de la controversia que nos ocupa. No obstante, es pertinente mencionar que la redacción del delito de escalamiento se mantuvo inalterada en el Código Penal de 2012, Ley Núm. 146-2012. Siendo así, los elementos del delito continúan siendo los mismos. Véase, Art. 194 del Código Penal de 2012, supra. La única modificación fue a los fines de aumentar la clasificación del delito a grave y fijar una pena de reclusión por un término fijo de cuatro (4) años. Íd. En lo que respecta al delito de escalamiento agravado, el Código Penal vigente añadió varias circunstancias específicas en las que se puede cometer el delito. De esta manera, se amplió el alcance del mismo al incluir cualquier otro lugar en donde la víctima tenga una expectativa razonable de intimidad. Véase, Art. 195(a) del Código Penal de 2012, supra. Asimismo, se incluyó aquella propiedad asignada por el gobierno para brindar vivienda pública y la circunstancia de cuando medie forzamiento para la penetración. Véase, Art. 195, incisos (b) y (c) del Código Penal de 2012, supra. A pesar de tales especificaciones, la penetración a una casa ocupada con el propósito de cometer delito de apropiación ilegal o cualquier delito grave – circunstancias que se evalúan en el caso de autos – continúa considerándose escalamiento agravado. En el nuevo artículo simplemente se añaden otras circunstancias que también podrían constituir la comisión de este delito. Consecuentemente, la doctrina que pautamos mediante esta Opinión es vinculante a la interpretación y aplicación de los Arts. 194 y 195 del Código Penal de 2012, supra.

## I

Por hechos acaecidos el 28 de septiembre de 2011, el Ministerio Público presentó acusaciones en contra de los peticionarios, la Sra. Zaida M. Torres Martínez ("señora Torres") y su pareja consensual, el Sr. Raymond Casillas Díaz ("señor Casillas"), por los delitos de agresión grave y escalamiento agravado, conductas proscritas en los Arts. 122 y 204 del Código Penal de 2004, <u>supra</u>. Asimismo, se presentó una acusación por el delito menos grave de alteración a la paz en contra de la señora Torres. En lo que respecta al delito de escalamiento agravado, el Ministerio Público presentó la siguiente acusación:

> [e]n el nombre y por la autoridad del Pueblo de Puerto Rico en el caso criminal NSCR 2011-1374 por Artículo 204 del Código Penal, delito, grave, del Pueblo de Puerto Rico versus Zaida M. Torres Martínez, […] por el delito del Artículo 204 del Código Penal cometido de la manera siguiente: La referida acusada, Zaida M. Torres Martínez en concierto y común acuerdo con Raymond Casillas Díaz allá en, o para el día 28 de agosto del 2011, en Río Grande, Puerto Rico que forma parte de la jurisdicción del Tribunal de Primera Instancia, Sala de Fajardo, **ilegal, voluntaria, maliciosa, a sabiendas […] criminalmente y estando ocupada penetró en la residencia, propiedad de la Sra. Lisette Vargas Gerena, con el propósito de cometer agresión agravada grave, amenaza, daños y otros delitos, como en efecto los cometió,** consistente en que la aquí imputada llegó a la residencia, arriba mencionado [sic], en donde sin autorización, tuvo acceso a la misma agrediendo a la perjudicada, amenazándola y rompiendo la ventana de la casa. Éste [sic] hecho es contrario a la ley para tal caso, prevista y a la paz y dignidad del Pueblo de Puerto Rico […]. (Énfasis suplido).[2]

---

[2] Véase, Transcripción del Juicio en su Fondo, págs. 60 (ln. 7-23); 61 (ln. 1-19). Es preciso mencionar que ni la denuncia ni la acusación forman parte del expediente del caso de autos.

En cuanto al delito de agresión grave, el Ministerio Público expuso lo siguiente en la correspondiente acusación:

> [e]n el nombre y por la autoridad del Pueblo de Puerto Rico en el caso criminal NSCR 2011-1375 por Artículo 122 del Código Penal Grave, cuarto grado. El Pueblo de Puerto Rico versus Zaida M. Torres Martínez, el Fiscal formula acusación contra Zaida M. Torres Martínez […] por el delito de Artículo 122, Código Penal Grave, cuarto grado, cometido de la siguiente manera: La referida acusada, Zaida M. Torres Martínez en concierto y común acuerdo con Raymond Casillas Díaz, allá en, o para el día 28 de agosto de 2011 en Río Grande Puerto Rico que forma parte de la jurisdicción del Tribunal de Primera Instancia, Sala de Fajardo, ilegal, voluntaria, maliciosa, a sabiendas y criminalmente por cualquier medio o forma causó a la señora Lisette Vargas Gerena una lesión consistente en que la aquí imputada cogió a la perjudicada por los hombros, lanzándola sobre su esposo, Miguel Bauzó Torres, estando la perjudicada, dándole la espalda a la aquí imputada. Ésta la cogió por el cuello apretándola fuertemente a la vez que le aruñaba el cuello. Luego el imputado, Raymond Casillas Díaz, la aguantó por los hombros, mientras que la aquí imputada, Zaida Torres la mordía en el brazo derecho, arrancándole un pedazo de carne. Luego en el forcejeo, Raymond la seguía sujetando por los hombros, pegándola contra una ventana de cristal rompiendo la misma e hiriendo a la perjudicada en el dedo meñique de la mano derecha. La perjudicada tuvo que ser atendida en el CDT de Río Grande, en donde el médico de turno la atendió limpiando las heridas, poniéndole una inyección anti-tetánica y recentándole antibiótico. Ya que debido a la mordida tiene una bacteria. Este hecho es contrario a la Ley para tal caso prevista y a la paz y dignidad del Pueblo de Puerto Rico […].[3]

Las acusaciones presentadas contra el señor Casillas corresponden a las mismas reseñadas, tanto en términos del delito de escalamiento agravado como en lo que respecta al

---

[3] Íd., págs. 62 (ln. 7-23); 63; 64 (ln. 1-11). La señora Torres hizo una alegación de no culpabilidad en ambos cargos. Íd., págs. 61 (ln. 20-23); 64 (ln. 12-15).

delito de agresión grave.[4] Luego de los incidentes procesales de rigor, el juicio por jurado se celebró los días 13 y 17 de julio de 2012. Durante el mismo, el Ministerio Público presentó la siguiente prueba testifical: el testimonio de los perjudicados, la Sra. Lisette Vargas Gerena ("Lisette") y el Sr. Miguel Bauzó Torres ("Miguel"),[5] junto al testimonio del Agente Orlando Rivera Canales.[6] Para cumplir fiel y cabalmente con nuestra función revisora, a continuación presentamos las circunstancias generales en las que se desarrollaron los hechos que originaron la controversia ante nos y un resumen de las partes pertinentes de los relatos ofrecidos por los testigos de cargo.

A. **Circunstancias generales**

Para el 28 de agosto de 2011, Lisette y Miguel sostenían una relación consensual de más de trece años durante la cual procrearon dos hijos, quienes al momento de los hechos tenían diez y cinco años de edad.[7] Estos residían en una casa aledaña a la residencia de los peticionarios, la señora Torres, y su pareja consensual,

---

[4] Íd., págs. 64 (ln. 22-23); 65; 66 (ln. 1-10, 20-23); 67; 68; 69 (ln. 1-2). Para ambas acusaciones, el señor Casillas hizo una alegación de no culpabilidad. Íd., págs. 66 (ln. 11-14); 69 (ln. 3-6).

[5] Para propósitos de claridad de los hechos acaecidos, procederemos a identificar a los perjudicados por su primer nombre.

[6] Los testimonios de las mencionadas tres personas constituyó toda la prueba testifical presentada por el Ministerio Público. Íd., pág. 69 (ln. 14-17). La otra evidencia presentada por el Ministerio Público corresponde a varias fotografías que reflejaban las heridas sufridas por Lisette y el Informe de Incidente preparado por el Agente Rivera Canales.

[7] Íd., págs. 86 (ln. 14-22); 87 (ln. 1-3).

el señor Casillas.[8] La primera es la señora madre de Miguel y suegra de Lisette. Ambas habían sostenido diferencias en el pasado.[9]

### B. Testimonio de la Sra. Lisette Vargas Gerena

Durante el examen directo, Lisette expresó que en la fecha del 28 de septiembre de 2011 se encontraba junto a Miguel trabajando en el patio de su hogar.[10] En horas de la tarde, este le mencionó que iba a buscar a sus hijos, quienes se encontraban en casa de su abuela materna, mientras ella se quedaba cocinando.[11] Según explicó, transcurrieron como dos horas y Miguel no llegaba "y eso causó como que, molestia en mí, y despúes vino y volvió y se fue de nuevo, y yo, ah, como que, como que mira éste, me puso a cocinar y se fue, me dejó solas [sic]".[12]

Una vez Miguel llegó al hogar, ambos comenzaron a discutir en la parte baja de la residencia, mientras los dos menores se encontraban en la parte alta viendo televisión "casi a todo volumen".[13] Lisette le reclamó a Miguel "¿dónde tú estás?, si yo te estoy esperando horas, me dijiste que venías ahora, si yo te hice arroz, chuleta,

---

[8] Tanto la residencia de los perjudicados, Miguel y Lisette, como la de los peticionarios, la señora Torres y el señor Casillas, están enclavadas en el mismo solar. Por lo que, está una próxima a la otra.

[9] Íd., pág. 354 (ln. 8-23).

[10] Íd., pág. 88 (ln. 13-16).

[11] Íd., págs. 88 (ln. 17-18); 89 (ln. 18-21).

[12] Íd., pág. 88 (ln. 21-23).

[13] Íd., págs. 90 (ln. 7-23); 91 (ln. 1-2).

me dejaste la comida y te fuiste".[14] Mientras ambos discutían, Lisette observó a su suegra, la señora Torres, "bajando en bata" de su residencia.[15] Al verla, esta narró que sucedió lo siguiente:

> R    "Okay". Miguel sube las escaleras, yo subo detrás de él. Entonces Miguel se sienta con los nenes a ver los muñequitos y ella y dice, "que me voy a…"
>
> P    ¿Quién entra? ¿Quién entra?
>
> R    La señora Zaida.
>
> P    ¿Entra a dónde?
>
> R    A la sala de mi casa.
>
> P    ¿Y quién le dio autorización a doña Zaida?
>
> R    Nadie.
>
> P    A entrar. ¿Nadie le dio autorización?
>
> R    No.
>
> **P    "Okay". Y ella entra a su casa, "okay". ¿Y qué sucede cuando doña Zaida entra a su casa?**
>
> **R    Me voy a llevar los nenes, es lo que ella dice, que me voy a llevar los nenes, pero, armá.**
>
> **P    Pero, ¿por qué doña Zaida iba a su casa a llevarse a los nenes?**
>
> **R    Decía me voy a llevar los nenes.[16]**

Subsiguientemente, y ante la negativa de Lisette de acceder a que la señora Torres se llevara a sus nietos, esta última empujó a Lisette sobre Miguel quien estaba

---

[14] Íd., pág. 90 (ln. 18-22).

[15] Íd., pág. 91 (ln. 1-2).

[16] (Énfasis suplido). Íd., págs. 95 (ln. 18-23); 96 (ln. 1-17).

sentado en el sofá y le dijo "si ustedes quieren matarse, mátense".[17] Lisette se levantó y al dirigirse al balcón, observó al señor Casillas en la puerta de su residencia.[18] Esta le indicó que se fuera de su casa.[19] En ese momento, la señora Torres aruñó a Lisette por el área del cuello.[20] Al Lisette ponerse de frente a la señora Torres, el señor Casillas la sujetó fuertemente por los hombros, forcejearon y la señora Torres la mordió en el área del hombro, mientras el señor Casillas aún aguantaba a Lisette.[21] Acto seguido, el señor Casillas empujó a Lisette hacia una ventana y esta sufrió una herida en el área del dedo.[22]

Posteriormente, Miguel logró sacar a su madre, la señora Torres, de la casa y el señor Casillas soltó a Lisette.[23] Al verse el brazo, Lisette salió llorando y la señora Torres se burló.[24] A Lisette le dio coraje, bajó las escaleras y la señora Torres se fue corriendo, junto con el señor Casillas, para su casa y se encerraron.[25] Lisette se le fue detrás hasta su casa y le gritó "si tú me vas a

---

[17] Íd., pág. 97 (ln. 19-20).

[18] Íd., pág. 99 (ln. 10-13).

[19] Íd., pág. 100 (ln. 12-17).

[20] Íd., págs. 100 (ln. 22-23); 101 (ln. 1-6).

[21] Íd., págs. 102 (ln. 17-23); 103; 104.

[22] Íd., pág. 105 (ln. 10-23).

[23] Íd., págs. 110 (ln. 17-23); 111 (ln. 1-2).

[24] Íd., págs. 111 (ln. 11-23); 112.

[25] Íd., págs. 113, 114 (ln. 1-11).

dar de verdad baja".[26] Más tarde en la noche, llegó un oficial de la Policía de Puerto Rico, quien le indicó a Lisette que había acudido al lugar en respuesta a una llamada del señor Casillas ante una alegada situación de violencia doméstica entre esta y Miguel.[27] Al día siguiente de los hechos, Lisette acudió al Cuartel de la Policía a presentar una querella en contra de su suegra y del compañero consensual de esta última.[28] Una vez en el cuartel, el policía le recomendó que fuera al hospital porque estaba sangrando en el área del dedo.[29] Finalmente, Lisette indicó que acudió al hospital donde le atendieron las heridas y le pusieron una inyección antitetánica.[30]

Durante su contrainterrogatorio, Lisette expresó que el 28 de septiembre de 2011 tuvo una "situación personal con su esposo".[31] Respecto al propósito para el cual entró la señora Torres a su residencia, Lisette sostuvo el siguiente intercambio con el abogado de defensa:

> **P    Que sí, que estaba abierta [la puerta].
> Entonces, doña Zaida entró, ¿y qué ocurrió,**

---

[26] Íd., pág. 114 (ln. 2-3).

[27] Íd., pág. 121 (ln. 1-6).

[28] Íd., págs. 128 (ln. 21-23); 129 (ln. 1-4).

[29] Íd., pág. 129 (ln. 5-13). Si bien acudió al cuartel al día siguiente de los hechos, los cargos no fueron presentados el 29 de agosto de 2011, ya que, según explicó Lisette durante su testimonio, el Supervisor en el cuartel la envió al hospital porque "estaba botando sangre por el dedo". Íd. De igual forma, durante su testimonio, Lisette expresó que no presentó cargos en contra de su suegra, la señora Torres, y su compañero consensual, el señor Casillas, porque "estaba acabando de ocurrir el problema". Íd., pág. 122 (ln. 12-18).

[30] Íd., págs. 129 (ln. 15-23); 130, 131, 132 (ln. 1-18).

[31] Íd., pág. 166 (ln. 6-11).

qué le dijo doña Zaida? ¿A qué ella fue
allí?

R    "Vengo a llevar los nenes, me voy a llevar
los nenes".

P    "Me voy a llevar los nenes". O sea, que doña
Zaida no llegó allí, a caerle encima a usted
y a Miguel. ¿Verdad que ella no…, que eso
fue así? Contésteme.

R    No.

P    Verdad que no. O sea, que ustedes
estuvieron un momento allí hablando en
el dime y direte ese de si se lleva a
los nenes o no se los lleva. ¿Verdad que
sí?

R    Yo le dije que no se los iba a llevar
los nenes.[32]

Finalmente, Lisette reconoció que el mayor de sus hijos pudo haber llamado a su abuela mediante un teléfono celular que esta última le había regalado al menor.[33]

**C. Testimonio del Sr. Miguel Bauzó Torres**

Durante el examen directo, Miguel declaró que el 28 de agosto de 2011 se encontraba junto a Lisette trabajando en el patio de su hogar hasta las 5:00 pm cuando salió con su cuñado.[34] De acuerdo con este testigo, cuando regresó a su hogar aproximadamente a las 8:00 pm, Lisette comenzó a reclamarle "mira, me dejaste la comida afuera, no te la comiste".[35] Así las cosas, Miguel narró que una vez observó que la señora Torres venía bajando, procedió a subir junto

---

[32] (Énfasis suplido). Íd., págs. 189  (ln. 8-22); 190 (ln. 1-4).

[33] Íd., págs. 234, 235 (ln. 1-3).

[34] Íd., pág. 271 (ln. 13-23).

[35] Íd., pág. 272 (ln. 1-7).

a Lisette al área donde estaban los dos menores.[36] El testigo explicó que una vez allí su mamá, la señora Torres, entró a la residencia porque "ella entra así, ella va y viene".[37] Según expuso, la señora Torres "entró brava"[38] y "quería llevarse a los nenes a todas formas"[39] porque "supuestamente estamos peleando"[40].

Durante el resto del testimonio, Miguel describió el incidente acaecido entre la señora Torres, el señor Casillas y Lisette, conforme a la versión ofrecida por esta última durante su examen directo.[41] Durante el contrainterrogatorio, sin embargo, Miguel añadió que ingirió bebidas alcohólicas previo a regresar a su hogar el 28 de agosto de 2011 y que cuando llegó, Lisette lo recibió con coraje.[42] Según lo declarado por el testigo, la puerta de su hogar estaba abierta y la señora Torres entró con el objetivo de buscar a sus nietos.[43]

Respecto al hecho de que su hijo mayor haya llamado a la señora Torres para que los buscara, Miguel sostuvo que este "…tiene un celular que la abuela le regaló, y todo el tiempo se hablan, todo el tiempo. Cualquier cosita, fuu…,

---

[36] Íd., pág. 274 (ln. 14-20).

[37] Íd., pág. 275 (ln. 15-20).

[38] Íd., pág. 276 (ln. 8).

[39] Íd., pág. 276 (ln. 19-20).

[40] Íd., pág. 277 (ln. 1-4).

[41] Íd., págs. 277 (ln. 5-23); 278-295.

[42] Íd., págs. 305 (ln. 9-19); 306 (ln. 6-21).

[43] Íd., págs. 314 (ln. 2-23); 315 (ln. 1-11); 316 (ln. 18-20).

y para allá iba abuela a buscarlo".[44] Sobre este particular, a preguntas del Ministerio Público durante su re-directo, Miguel comentó "[t]engo entendido que fue, que… [mi hijo] llamó a la abuela porque se quería ir… para casa de la abuela".[45]

### D. Testimonio del Agente Orlando Rivera Canales

Durante el examen directo, el Agente Rivera testimonió que el 28 de agosto de 2011 se encontraba laborando en el turno de 8:00 pm a 4:00 am cuando recibió una llamada por medio del sistema 9-1-1 con una alerta sobre un aparente incidente de violencia doméstica.[46] El Agente declaró que al personarse al lugar encontró un "revolú grande".[47] Señaló que entrevistó a los peticionarios y que estos le indicaron que Miguel y Lisette habían sostenido una "pelea" y que el nieto – el hijo mayor de Miguel y Lisette– les había llamado para que lo fueran a buscar.[48] Según explicó, Miguel y Lisette le indicaron que habían tenido una diferencia "pero no era nada de llegar a una Ley 54".[49] Durante el contrainterrogatorio, el Agente Rivera expresó que vio la llamada que le hiciera el hijo

---

[44] Íd., pág. 333 (ln. 5-9). De acuerdo con el testimonio de Miguel, los nenes tienen muy buena relación con su abuela. Este describió que los menores son "muy engreídos" con la señora Torres. Íd., pág. 313 (ln. 17-23).

[45] Íd., pág. 333 (ln. 17-23).

[46] Íd., pág. 337 (ln. 1-14).

[47] Íd., pág. 339 (ln. 2-6).

[48] Íd., págs. 341, 342 (ln. 1-3).

[49] Íd., pág. 340 (ln. 14-17).

de Miguel y Lisette desde su teléfono celular a la señora Torres y "[q]ue era que quería ir para donde abuelita".[50]

Finalmente, las partes dieron por sometido el caso y ofrecieron sus correspondientes informes finales. Luego de evaluar la prueba presentada para su consideración, el Jurado emitió un veredicto de culpabilidad en contra de los peticionarios por los delitos de escalamiento agravado y agresión en su modalidad simple. Acorde con ello, el Tribunal de Primera Instancia emitió las sentencias condenatorias en las que le impuso a cada uno de los peticionarios una pena de 3 años y un día de cárcel por el delito de escalamiento agravado y una pena de 90 días de cárcel por el delito de agresión, a cumplirse concurrentemente entre sí.[51] Además, el Tribunal de Primera Instancia emitió un fallo en contra de la señora Torres por el delito menos grave de alteración a la paz, por lo que le impuso una sentencia adicional de 90 días, a cumplirse concurrentemente con la anterior.[52]

No contestes con estas determinaciones, los peticionarios acudieron al Tribunal de Apelaciones mediante recursos separados. Sin embargo, ambos petitorios

---

[50] Íd., págs. 353 (ln. 3-23); 361 (ln. 13-14).

[51] Véase, Apéndice de la Petición de *Certiorari*, págs. 24-25; 33-34. Tras el veredicto de culpabilidad, los peticionarios presentaron una solicitud de nuevo juicio basado en las Reglas 187 y 188 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 187 y R. 188, y una solicitud para que se anulara el veredicto. Íd., págs. 67-76. Mediante una extensa resolución emitida y notificada el 20 de agosto de 2012, el Tribunal de Primera Instancia denegó tal petitorio. Íd., págs. 78-108.

[52] Véase, Transcripción del Juicio en su Fondo, pág. 66 (ln. 9-18).

fueron consolidados por el foro intermedio.[53] En estos, los peticionarios alegaron no haber tenido una representación legal adecuada, ya que habían sido representados por el mismo abogado, aun cuando tenían defensas encontradas. Según adujeron, ello ocasionó un conflicto de intereses que perjudicó su defensa. Arguyeron, además, que la prueba presentada no fue suficiente para probar su culpabilidad más allá de duda razonable.

Mediante una sentencia archivada en autos el 4 de febrero de 2013, el Tribunal de Apelaciones confirmó las sentencias apeladas.[54] En cuanto a la alegación de que los peticionarios no tuvieron una representación legal adecuada, el foro apelativo resaltó que no surgía que entre ellos existieran intereses encontrados y que los peticionarios no especificaron en qué consistían las alegadas defensas contradictorias.[55] Asimismo, concluyó que el Ministerio Público cumplió con su deber de probar más allá de duda razonable todos los elementos de los delitos imputados.[56] Sobre este particular, el foro apelativo intermedio expresó lo siguiente:

> [e]n este caso, se presentó prueba suficiente para establecer la intención criminal de los apelantes y su conexión con los delitos por los cuales fueron encontrados culpables. Los apelantes fueron acusados de entrar a la

---

[53] Véase, Apéndice de la Petición de *Certiorari*, págs. 35-62. Los casos consolidados por el Tribunal de Apelaciones corresponden a KLAN2012-01475 y KLAN2012-01476. Íd., págs. 17-25 y 26-34, respectivamente.

[54] Íd., págs. 2-16.

[55] Íd., pág. 8.

[56] Íd., pág. 13.

residencia de Bauzó y Vargas y agredir a esta frente a sus hijos. Esencialmente, según indicado, se probó que los apelantes penetraron la residencia de los perjudicados sin el consentimiento de estos y Torres agredió a Vargas con sus manos y, luego, con su boca mientras Casillas agarraba a Vargas por sus brazos. Luego de examinar la transcripción del juicio, no tenemos duda de que la declaración de los testigos no es increíble y estos fueron explícitos y consistentes en sus testimonios. Ciertamente, la prueba de cargo le mereció credibilidad al juzgador y esta prueba fue suficiente en derecho para establecer los elementos de los delitos imputados.[57]

Inconformes aún, el 26 de febrero de 2013 los peticionarios presentaron el requerimiento de epígrafe en el cual expusieron los siguientes señalamientos de error:

> **[e]rró el Tribunal de Apelaciones al determinar que a los peticionarios no se les violó su derecho constitucional a una adecuada representación legal al estar representados por un mismo abogado aun cuando ten[í]a conflicto de intereses por ellos, los peticionarios, tener defensas encontradas.**

> **Erró el Tribunal de Apelaciones al determinar que los veredictos del Jurado no son contradictorios a la prueba presentada y están sostenidos por dicha prueba.[58]**

Examinado el recurso presentado por los peticionarios, el 31 de mayo de 2013 expedimos el auto solicitado. Con el beneficio de la comparecencia de ambas partes, procedemos a delinear el marco legal pertinente a la controversia que nos ocupa.

---

[57] Íd., pág. 14.

[58] Petición de *Certiorari*, pág. 16. No es necesario discutir el primer señalamiento de error por entender que la discusión y resolución que formularemos más adelante respecto al segundo error dispone de la controversia ante nuestra consideración.

                              II

A. <u>Presunción de inocencia y estándar de revisión apelativa</u>

Como cuestión de umbral, debemos tener presente que el recurso ante nuestra consideración supone el ineludible ejercicio de evaluar la evidencia que tuvo el jurado ante su consideración. Esto con el objetivo de determinar su suficiencia para validar las sentencias condenatorias confirmadas por el Tribunal de Apelaciones. Ante esta difícil tarea es preciso reiterar la vigencia de dos principios cardinales en nuestro ordenamiento jurídico penal: *primero*, la presunción de inocencia que cobija a todo acusado de delito en Puerto Rico; *segundo*, la deferencia que merece la apreciación de la prueba realizada por el juzgador de hechos del foro primario.

1. <u>Presunción de inocencia</u>

Bajo nuestro sistema de enjuiciamiento criminal toda persona debe ser hallada culpable más allá de duda razonable. Esto es principio consustancial del precepto constitucional que dispone que "[e]n todos los procesos criminales, el acusado disfrutará del derecho... a gozar de la presunción de inocencia".[59] Cónsono con esta disposición constitucional, nuestro esquema procesal penal establece que "[e]n todo proceso criminal, se presumirá inocente el acusado mientras no se probare lo contrario y

---

[59] Art. II, Sec. 11, Const. E.L.A., L.P.R.A., Tomo 1.

en todo caso de existir duda razonable acerca de su culpabilidad, se le absolverá".[60]

Es por ello que en nuestro sistema de justicia criminal el Ministerio Público tiene la obligación de presentar suficiente evidencia sobre *todos* los elementos del delito y su conexión con el acusado a fin de establecer la culpabilidad de este más allá de duda razonable. Pueblo v. García Colón I, 182 D.P.R. 129, 174 (2011); Pueblo v. Santiago et al., 176 D.P.R. 133, 143 (2009); Pueblo v. Rivera Ortiz, 150 D.P.R. 457, 462 (2000); Pueblo v. Ramos Álvarez, 122 D.P.R. 287, 315-316 (1988). Esto constituye uno de los imperativos más básicos y esenciales del debido proceso de ley. Pueblo v. Irizarry, 156 D.P.R. 780, 786 (2002); Pueblo v. De León Martínez, 132 D.P.R. 746, 764 (1993); Pueblo v. Cruz Granado, 116 D.P.R. 3, 24-25 (1985).[61]

Ahora bien, en múltiples ocasiones hemos expresado que tal estándar de exigencia probatoria no significa que el Ministerio Público tiene el deber de presentar evidencia dirigida a establecer la culpabilidad del acusado con certeza matemática. Pueblo v. Feliciano Rodríguez, 150 D.P.R. 443, 447 (2000); Pueblo v. Rosario Reyes, 138 D.P.R. 591, 598 (1995); Pueblo v. Pagán Ortiz, 130 D.P.R.

---

[60] Regla 110 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 110.

[61] Véase, además, W. R. LaFave & A. W. Scott, Handbook on Criminal Law, MN: West Publishing Co., 1972, pág. 44.

470, 480 (1992).[62] Lo que se requiere es prueba suficiente que "produzca certeza o convicción moral en una conciencia exenta de preocupación o en un ánimo no prevenido". Pueblo v. García Colón I, supra, págs. 174-175; Pueblo v. Acevedo Estrada, 150 D.P.R. 84, 100 (2000).

En este particular, la duda razonable que acarrea la absolución del acusado no es una duda especulativa o imaginaria, ni cualquier duda posible. Más bien, es aquella duda producto de una consideración justa, imparcial y serena de la totalidad de la evidencia del caso. Pueblo v. García Colón I, supra, pág. 175; Pueblo v. Santiago et al., supra, pág. 142; Pueblo v. Irizarry, supra, pág. 788. En síntesis, existe duda razonable cuando el juzgador de los hechos siente en su conciencia insatisfacción o intranquilidad con la prueba de cargo presentada. En atención a ese principio, los foros apelativos deben tener la misma tranquilidad al evaluar la prueba en su totalidad. En Pueblo v. Colón Burgos, 140 D.P.R. 564, 581 (1996), enunciamos que:

> [l]a suficiencia de la prueba es, pues, un análisis estrictamente en derecho que, aunque recae sobre la evidencia, sólo busca asegurar que, de cualquier manera en que se interprete la veracidad, los requisitos legales estarán presentes para poder permitir cualquiera de los veredictos posibles. **Ante prueba insuficiente, un jurado no podría hallar culpable al acusado**

---

[62] Respecto a la evaluación y suficiencia de la prueba, la Regla 110 de Evidencia establece que el juzgador de hechos tiene el deber de "evaluar la evidencia presentada con el propósito de determinar cuáles hechos han quedado establecidos o demostrados". 32 L.P.R.A. Ap. VI, R. 110. Esto a tenor con los principios establecidos en el mencionado precepto, entre ellos, el inciso (c) que dispone que "[p]ara establecer un hecho, no se exige aquel grado de prueba que, excluyendo posibilidad de error, produzca absoluta certeza". Íd.

> **irrespectivamente de si la prueba amerita o no su credibilidad... Como primer paso a una determinación de suficiencia, el tribunal ha de cerciorarse que el Ministerio Público haya aducido elementos del delito imputado...** También se exige que la evidencia conecte al acusado con los delitos imputados, una función eminentemente propia del juzgador de la credibilidad. **Dentro de la responsabilidad del tribunal de examinar la suficiencia, éste ha de asegurarse de que la prueba de cargo sea una que, de ser creída, pueda conectar al acusado con el delito imputado.**[63]

Cónsono con lo anterior, la apreciación realizada por el juzgador de hechos sobre la culpabilidad de un acusado es una cuestión mixta de hecho y de derecho. Siendo así, la determinación de culpabilidad más allá de duda razonable es revisable en apelación como cuestión de derecho. Pueblo v. Rodríguez Pagán, 182 D.P.R. 239, 259 (2011); Pueblo v. Rivero, Lugo y Almodóvar, 121 D.P.R. 454, 472 (1998); Pueblo v. González Román, 138 D.P.R. 691, 708 (1995); Pueblo v. De León Martínez, supra, pág. 765.[64]

2. **Estándar de revisión apelativa en casos de naturaleza criminal**

Al evaluar si se probó la culpabilidad de un acusado más allá de duda razonable, los foros apelativos no debemos de hacer abstracción de la ineludible realidad de que los jueces de primera instancia y los jurados están en mejor posición de apreciar y aquilatar la prueba y los testimonios presentados. Por lo tanto, la apreciación

---

[63] (Énfasis suplido) (Citas omitidas). Pueblo v. Colón Burgos, 140 D.P.R. 564, 581 (1996).

[64] Véanse, además, Pueblo v. Cabán Torres, 117 D.P.R. 645 (1986); Pueblo v. Miranda Ortiz, 117 D.P.R. 188 (1986); Pueblo v. Pagán Díaz, 111 D.P.R. 608, 621 (1981); Pueblo v. Carrasquillo Carrasquillo, 102 D.P.R. 545, 552 (1974); Pueblo v. Serrano Nieves, 93 D.P.R. 56, 60 (1986).

imparcial que de la prueba realiza el juzgador de los hechos en el foro primario merece gran respeto y deferencia por parte de los foros apelativos. Pueblo v. Rodríguez Pagán, supra; Pueblo v. Acevedo Estrada, 150 D.P.R. 84, 99 (2000); Pueblo v. Echevarría Rodríguez, 128 D.P.R. 289, 326 (1991). Al respecto, en Pueblo v. Irizarry, supra, págs. 788-789, expresamos que:

> … en el ejercicio de tan delicada función revisora, no podemos abstraernos de las limitaciones que rigen el proceso de evaluación de la prueba por parte de un tribunal apelativo. Al enfrentarnos a la tarea de revisar cuestiones relativas a convicciones criminales, siempre nos hemos regido por la norma a los efectos de que la apreciación de la prueba corresponde, en primera instancia, al foro sentenciador… .
>
> Ello no obstante, en casos penales debemos siempre recordar que el referido proceso analítico tiene que estar enmarcado, por imperativo constitucional, en el principio fundamental de que la culpabilidad del acusado debe ser probada más allá de duda razonable. En consecuencia, y aun cuando ello no ocurre con frecuencia, **hemos revocado sentencias en las cuales las determinaciones de hecho, aunque sostenidas por la prueba desfilada, no establecen la culpabilidad del acusado más allá de duda razonable.**[65]

Así, al revisar cuestiones de hecho en condenas criminales, constituye norma reiterada de esta Curia que no intervendremos con la evaluación de la prueba realizada por el juzgador de hechos en ausencia de pasión, prejuicio, parcialidad o error manifiesto, o cuando un análisis integral de la prueba así lo justifique. Pueblo v. Viruet Camacho, 173 D.P.R. 563, 584 (2008); Pueblo v. Acevedo Estrada, supra, págs. 98-99; Pueblo v. Calderón

---

[65] (Énfasis suplido) (Citas omitidas). Pueblo v. Irizarry, supra.

Álvarez, 140 D.P.R. 627, 644 (1996).[66] Ahora bien, hemos enunciado y reiterado tal normativa conscientes que el juzgador de hechos podría equivocarse en la apreciación de la prueba que realiza.

En ese escenario, hemos establecido que los foros apelativos podrán intervenir con tal apreciación cuando de una evaluación minuciosa surjan "serias dudas, razonables y fundadas, sobre la culpabilidad del acusado". Pueblo v. Santiago, supra, pág. 148; Pueblo v. Irizarry, supra, pág. 789; Pueblo v. Carrasquillo Carrasquillo, supra, pág. 551. Esto es, si de un análisis ponderado de la prueba desfilada ante el foro primario surge duda razonable y fundada sobre si la culpabilidad del acusado fue establecida más allá de duda razonable, este Tribunal tiene el deber de dejar sin efecto el fallo o veredicto condenatorio. Íd.

Expuesto el marco legal general aplicable, pasemos a revisar el delito de escalamiento agravado por el cual fueron hallados culpables ambos peticionarios, así como el delito de alteración a la paz imputado a la señora Torres.

## B. Delito de escalamiento y escalamiento agravado

En el Código Penal de 2004, ordenamiento penal vigente al momento de los hechos, el delito de escalamiento estaba tipificado de la siguiente manera: "[t]oda persona que

---

[66] Véanse, además, Pueblo v. Dávila Delgado, 143 D.P.R. 157, 173 (1997); Pueblo v. Chévere Heredia, 139 D.P.R. 1, 16 (1995); Pueblo v. Echevarría Rodríguez, supra; Pueblo v. Fradera Olmo, 122 D.P.R. 67, 79 (1988); Pueblo v. Cabán Torres, 117 D.P.R. 645, 648 (1986); Pueblo v. Bonilla Romero, 120 D.P.R. 92, 111 (1987).

penetre en una casa, edificio u otra construcción o estructura, o sus dependencias o anexos, **con el propósito de cometer cualquier delito de apropiación ilegal o cualquier delito grave, incurrirá en delito menos grave**".[67] Si el delito de escalamiento descrito en el citado precepto, "se comete en un **edificio ocupado** incurrirá en delito grave de tercer grado", tipificado como escalamiento agravado.[68] Según se deduce de las citadas disposiciones, el delito de escalamiento se compone de dos elementos esenciales: (1) la penetración en una casa, edificio u otra construcción o estructura, o sus dependencias, la cual debe estar ocupada para fines del agravante de escalamiento; (2) con el propósito de cometer el delito de apropiación ilegal o cualquier delito grave. Pueblo v. Reyes Bonilla, 100 D.P.R. 265, 269 (1971).[69] Para fines de claridad, veamos los dos elementos de forma separada.

1. **Primer elemento: penetración a lugar protegido**

Como primer componente para la consumación del delito de escalamiento hallamos que la persona debe penetrar en una de las estructuras protegidas, a saber: a una casa, un

---

[67] (Énfasis suplido). Art. 203 del Código Penal de 2004, Ley Núm. 149-2004, 33 L.P.R.A. ant. sec. 4831. Este artículo procede del Art. 170 del derogado Código Penal de 1974. En el Código Penal vigente el delito de escalamiento se encuentra tipificado en el Art. 194. Véase, Art. 194 de la Ley Núm. 416-2012. Como mencionáramos en la nota 1, los elementos del tipo del delito de escalamiento permanecen inalterados, pero la pena aumenta a un término fijo de cuatro años de reclusión.

[68] (Énfasis suplido). Art. 204 del Código Penal de 2004, 33 L.P.R.A. ant. sec. 4832.

[69] Véase, además, D. Nevares Muñiz, Nuevo Código Penal de Puerto Rico, 5ta ed. rev., Puerto Rico, Ed. Instituto para el Desarrollo del Derecho, Inc., 2012, pág. 279.

edificio u otra construcción o a una estructura, sus anexos o dependencias. En cuanto al término *edificio*, desde <u>Pueblo v. Cosme Vargas</u>, 96 D.P.R. 836, 840 (1969), hemos sostenido que edificio es "cualquier estructura hecha para o dedicada a albergar personas o animales o a guardar cosas".[70]

Posteriormente, esta definición fue acogida en el Código Penal de 1979 y ampliada en el Código Penal de 2004.[71] Así, el Art. 14(k) del Código Penal de 2004 definía el término *edificio* como aquel que "comprende cualquier casa, estructura, barco, vagón, vehículo u otra construcción diseñada o adaptada para, o capaz de dar abrigo a seres humanos o que pueda usarse para guardar cosas o animales o para negocio".[72] Esto incluye "sus anexos, dependencias y el solar donde esté enclavado".[73]

El término *dependencia* se ha entendido como los recintos y espacios que, sin ser por sí mismos la morada o el negocio, están naturalmente unidos y responden a las

---

[70] En este caso, el apelante alegaba que el edificio penetrado no era uno de los protegidos por el estatuto de escalamiento. <u>Pueblo v. Cosme Vargas</u>, supra, pág. 838. Según sostuvo, "para que pueda cometerse escalamiento el edificio penetrado debe tener cuatro paredes y que el almacén en el cual penetró sólo tiene tres paredes, un techo y una acera". Íd. En aquella ocasión, no aceptamos tal contención y establecimos que "[e]l propósito del estatuto no es proteger una clase de edificio a diferencia de otros… sino que es proteger la vida y la propiedad". Íd., pág. 840.

[71] Como referencia a la definición del término edificio incluida en el Código Penal de 1974, *véase*, Art. 7, inciso 9: "[c]omprende cualquier casa, estructura, barco, vagón, vehículo u otra construcción diseñada o adaptada para, o capaz de dar abrigo a seres humanos o que pueda usarse para guardar cosas o animales".

[72] 33 L.P.R.A. ant. sec. 4642(k).

[73] Íd. En el Código Penal de 2012 se copió *ad verbatim* la citada definición de edificio. Véase, Art. 14(o) del Código Penal de 2012, <u>supra</u>.

necesidades de actividad desplegada en el local principal. En Pueblo v. Hernández Solís, 110 D.P.R. 388, 390 (1980), por ejemplo, indicamos que todo lo que es integral a la estructura principal es una dependencia o anexo de esta. Mientras que *vehículo* se considera como un edificio para fines de la consumación del delito de escalamiento cuando están en su función de dar albergue a personas o de guardar cosas o animales.[74]

Por su parte, la frase *edificio ocupado*, factor indispensable para el escalamiento agravado, comprende "cualquier casa, estructura, vehículo o lugar adaptado para acomodo nocturno de personas, o para llevar a cabo negocios en el mismo, para el cuidado de niños o personas, para enseñanza de cualquier nivel, o para fines públicos, siempre que esté en uso aunque al momento del hecho no haya personas presentes".[75] Esto, además, de sus anexos, dependencias y el solar donde esté enclavado.[76]

Respecto a la forma en que se debe producir ese primer elemento de penetración, en ocasiones anteriores hemos expresado que para efectos del delito de escalamiento, la penetración no tiene que ser completa, ni es necesario que el cuerpo del escalador penetre en la casa o edificio escalado. Esta puede ser parcial, ya que

---

[74] Véase, D. Nevares Muñiz, Nuevo Código Penal de Puerto Rico, op. cit., pág. 280.

[75] Art. 14(l) del Código Penal de 2004, supra, 33 L.P.R.A. sec. 4642.

[76] Íd. Esta redacción de edificio ocupado permanece inalterada en el Código Penal de 2012. Véase, Art. 14(p) del Código Penal de 2012, supra.

basta que el sujeto activo introduzca su mano dentro del lugar con una intención delictiva o que se utilice un imán o un artefacto para llevar a cabo la penetración. Véase, e.g., <u>Pueblo v. Soriano Rodríguez</u>, 92 D.P.R. 46, 49 (1965).[77]

### 2. <u>Segundo elemento: intención criminal</u>

Conforme a los principios más básicos del derecho penal sustantivo, en nuestro ordenamiento jurídico ningún individuo puede ser sancionado por un hecho previsto en una ley penal si el mismo no ha sido realizado con intención o negligencia.[78] Este principio de responsabilidad subjetiva tiene el objetivo de imputarle a un individuo únicamente aquellas acciones que son producto de su voluntad o aquéllas que pudo prever o impedir.[79] De esta manera, el sistema promueve el castigo únicamente para aquellos individuos que hayan obrado culpablemente.[80]

Cónsono con tal postulado, el Código Penal de 2004 establecía bajo qué parámetros se consideraría que un

---

[77] Íd., pág. 281. Véase, además, R. Ortega Vélez, <u>Código Penal de Puerto Rico (2004)</u>, 1era ed., Puerto Rico, Ed. Chrisely, 2007, págs. 215-216.

[78] Véase, Art. 22 del Código Penal de 2004, <u>supra</u>, 33 L.P.R.A. ant. sec. 4650. Para una explicación más detallada sobre este principio, *véase* S. Mir Puig, <u>Derecho Penal: Parte General</u>, 8va ed., Ed. IB de F, Buenos Aires-Montevideo, 2008, págs. 123-127. Véase, además, W.E. LaFave y otros, <u>Criminal Law</u>, 4ta ed., St. Paul, Ed. Thomson West, 2003, Secs. 6.1-6.5, págs. 421-514.

[79] D. Nevares Muñiz, <u>Nuevo Código Penal de Puerto Rico Comentado</u>, *op. cit.,* pág. 36; Informe del Senado de Puerto Rico sobre el P. del S. 2302, 22 de junio del 2003, pág. 23. Véase, además, D. Nevares Muñiz, <u>Derecho Penal Puertorriqueño: Parte General</u>, 5ta ed. rev., San Juan, Puerto Rico, Instituto para el Desarrollo del Derecho, Inc., 2005, pág. 200.

[80] L. E. Chiesa Aponte, <u>Derecho Penal Sustantivo</u>, San Juan, Pubs. J.T.S., 2007, pág. 141.

delito fue cometido con intención. Así, hallamos que el Art. 23 del mencionado cuerpo legal disponía que un delito fue cometido con intención cuando: (a) el hecho correspondiente ha sido realizado por una conducta dirigida voluntariamente a ejecutarlo; (b) el hecho correspondiente es una consecuencia natural de la conducta voluntaria del autor; o (c) el sujeto ha querido su conducta a conciencia de que implicaba un riesgo considerable y no permitido de producir el hecho delictivo realizado.[81] De esta manera, el Art. 23 del Código Penal de 2004, _supra_, exponía varias modalidades de intención que atendían el aspecto mental requerido para la comisión de aquellos delitos cuya consumación no se satisfacía con una mera negligencia.[82]

Ahora bien, bajo algunas disposiciones penales ese elemento mental de intención no es suficiente, ya que se requiere un componente subjetivo adicional para la realización del tipo delictivo. Es decir, para ciertos delitos es indispensable la existencia real de un fin o motivo ulterior como elemento clave para la consumación del hecho delictivo. En términos del Prof. Luis Ernesto Chiesa Aponte "[e]n estos supuestos se requiere, además de prueba sobre la intención del sujeto, evidencia de que actuó con determinado propósito o estado mental que

---

[81] Art. 23 del Código Penal de 2004, _supra_, 33 L.P.R.A. sec. 4651.

[82] Para una discusión detallada sobre las implicaciones de estas tres modalidades de intención bajo el derogado precepto del Código Penal de 2004, _véase_, Pueblo v. Rivera Cuevas, 181 D.P.R. 699, 711-712 (2011). Véase, además, L. E. Chiesa Aponte, Derecho Penal Sustantivo, San Juan, Pubs. J.T.S., 2007, págs. 143-163.

convierte su conducta en particularmente reprochable".[83] Ese propósito o estado mental adicional a la intención definida en el Código Penal es lo que en ocasiones se denomina como "intención específica".

Sobre este particular, es importante tener presente que la definición del término "intención específica" dependerá de la tipificación que la Asamblea Legislativa haya dispuesto para el delito bajo evaluación y del contexto en que utilicemos tal categoría. Como explica el Prof. Luis Ernesto Chiesa Aponte en su obra <u>Derecho Penal Sustantivo</u>:

> [d]ependiendo de la manera que se utilice el concepto intención específica se puede referir a dos cosas distintas: (1) el "propósito" o "conocimiento" como modalidades de la intención (o sea, dolo directo de primer y segundo grado), o (2) un elemento subjetivo distinto a la intención. Por tanto, es necesario distinguir entre delitos que son de intención específica en el primero de los sentidos y delitos que son de intención específica en el segundo.[84]

Conforme a ello, un delito particular podría considerarse como un hecho delictivo de "intención específica" bajo una de las mencionadas acepciones, pero no necesariamente bajo la otra. Este sería el caso, por ejemplo, del delito de apropiación ilegal. Según expresamos en <u>Pueblo v. Miranda Ortiz</u>, 117 D.P.R. 188, 194 (1986), este delito "es uno que, por su naturaleza, exige

---

[83] L. E. Chiesa Aponte, <u>Derecho Penal Sustantivo</u>, <u>op. cit.</u>, págs. 163-164.

[84] Íd., págs. 165-166; véase, además, L. E. Chiesa Aponte, <u>Intención Específica, Intoxicación Voluntaria y Otros Demonios</u>, 73 Rev. Jur. U.P.R. 83 (2004).

que se realice con la intención específica de apropiarse de los bienes". En esa ocasión, utilizamos el término "intención específica" en la primera acepción mencionada. Es decir, en el sentido de que el delito se debe cometer con "propósito" o "conocimiento". Empero, no sería correcto categorizar el delito de apropiación ilegal bajo la segunda acepción del término de "intención específica", toda vez que la tipificación de este delito no conlleva un elemento mental adicional a la intención de apropiarse de los bienes. Así lo reconocimos recientemente en Pueblo v. Rivera Cuevas, 181 D.P.R. 699, 715 (2011).

Es precisamente esa segunda acepción de la frase "intención específica" la que es aplicable al delito de escalamiento. Pueblo v. Reyes Bonilla, 100 D.P.R. 265, 267 (1971); Pueblo v. Rodríguez Rivera, 84 D.P.R. 299, 303-304 (1961); Pueblo v. Rosado Pérez, 78 D.P.R. 436 (1955). Contrario a lo señalado en Pueblo v. Robles González, 132 D.P.R. 554, 565 (1993),[85] el elemento subjetivo requerido en la figura del escalamiento no se satisface con alguna de las modalidades de la intención que contiene el Art. 23 del Código Penal de 2004.

Al respecto, nótese que escalamiento se define como la penetración a una de las estructuras especificadas en el

---

[85] En Pueblo v. Robles González, supra, pág. 565, esta Curia expresó que el escalamiento constituía un ejemplo de aquellos delitos de intención específica, pero entendida esta frase como una modalidad de la intención según definida en el Art. 15(a) del derogado Código Penal de 1974 - sustituido posteriormente por el Art. 23(a) del Código Penal de 2004, supra. Como expondremos más adelante, tal aseveración es incorrecta, ya que el elemento subjetivo requerido en el delito de escalamiento contiene un elemento mental **adicional** a las modalidades de intención definidas en el Art. 23 del Código Penal.

Código Penal "con el propósito de cometer cualquier delito de apropiación ilegal o cualquier delito grave".[86] Siendo así, este delito requiere para su consumación la concurrencia de un elemento mental adicional a la intención. En otros términos, no basta la mera intención de penetrar la estructura, sino que se requiere que tal penetración tenga la finalidad de cometer un delito grave o apropiación ilegal. De esta forma, tal finalidad corresponde al "motivo" o la "razón" por la cual la persona penetró en la propiedad.

Cónsono con lo anterior, para efectos del delito de escalamiento, el Ministerio Público tiene la obligación de alegar en la acusación y eventualmente presentar evidencia tendente a demostrar dos elementos subjetivos distintos: *primero*, la intención de penetrar la propiedad y; *segundo*, el propósito de cometer cualquier delito grave o apropiación ilegal. Ambos corresponden a elementos esenciales constitutivos del delito de escalamiento que deben ser demostrados por el Ministerio Público más allá de duda razonable.

En este punto resulta pertinente resaltar la imprescindibilidad de la concurrencia y simultaneidad que debe existir entre la intención específica de delinquir y la penetración a la propiedad.[87] Por ello, "[s]i la intención de cometer el delito de apropiación ilegal o

---

[86] Art. 203 del Código Penal de 2004, supra.

[87] D. Nevares Muñiz, Nuevo Código Penal de Puerto Rico, op. cit., pág. 275.

cualquier delito grave surge con posterioridad a la persona haber penetrado al lugar protegido por el artículo, no se da el delito de escalamiento".[88] Por lo tanto, la intención de cometer el delito de apropiación ilegal o cualquier delito grave que surja con *posterioridad* a la penetración de la propiedad no puede ser adjudicada como el elemento mental requerido para el delito de escalamiento. Finalmente, debemos recordar que la intención es una cuestión de hecho a ser evaluada y determinada por el jurado o el juez en los casos de juicio por tribunal de derecho. Pueblo v. Flores Betancourt, 124 D.P.R. 867, 878 (1989); Pueblo v. Bonilla Ortiz, 123 D.P.R. 434, 442 (1989).

## C. Delito de alteración a la paz

El Art. 247 del Código Penal de 2004, disponía en su inciso (a) que incurrirá en delito menos grave de alteración a la paz toda aquella persona que "**[p]erturbe la paz o tranquilidad** de una o varias personas con conducta ofensiva, que afecte el derecho a la intimidad en su hogar, o en cualquier otro lugar donde tenga una expectativa razonable de intimidad".[89] Para que se

---

[88] Íd.

[89] (Énfasis suplido). 33 L.P.R.A. ant. sec. 4875. El Art. 247 específicamente disponía tres modalidades en las que se podía incurrir en el delito de alteración a la paz, a saber:
    Incurrirá en delito menos grave toda persona que realice cualquiera de los siguientes actos:

        (a) perturbe la paz o tranquilidad de una o varias personas con conducta ofensiva, que afecte el derecho a la intimidad en su hogar, o en cualquier otro lugar donde tenga una expectativa razonable de intimidad;

configure dicho delito, hemos enunciado como primer elemento que el perjudicado se encuentre en paz al momento que el acusado interviene con este. <u>Pueblo v. García Colón I</u>, supra, 158 (2011); <u>Pueblo v. De León Martínez</u>, supra, pág. 767 (1993). En otros términos, para que una persona incurra en el delito de alteración a la paz es un requisito indispensable que la paz o tranquilidad de la víctima sea efectivamente alterada.

Al igual que establecimos en la discusión anterior, el Ministerio Público tiene la responsabilidad de demostrar todos los elementos del delito de alteración a la paz más allá de duda razonable. Siendo así, "…el estado anímico de la supuesta víctima antes del incidente debe ser objeto de prueba, toda vez que si la persona no estaba en un estado de paz o tranquilidad previo al momento de la manifestación, no existe paz alguna que pueda alterarse". <u>Pueblo v. García Colón I</u>, supra, pág. 158. Conforme a ello, hemos expresado que la existencia de todos esos factores, incluyendo el estado emocional del perjudicado previo a la intervención del acusado del delito de

---

(b) perturbe la paz o tranquilidad de una o varias personas mediante palabras o expresiones ofensivas o insultantes al proferirlas en un lugar donde quien las oye tiene una expectativa razonable de intimidad; o

(c) perturbe la paz o tranquilidad de una o varias personas mediante vituperios, oprobios, desafíos, provocaciones o palabras insultantes u ofensivas que puedan provocar una reacción violenta o airosa en quien las escucha. Íd.

alteración a la paz, no puede ser presumido por el juzgador de hechos. Íd., págs. 176-177.

Con este marco legal como norte, procedemos a evaluar y resolver los méritos de la controversia ante nuestra consideración.

## III

Primeramente, debemos enfatizar la normativa imperante en nuestro ordenamiento jurídico respecto al alto grado de deferencia que en nuestra función revisora a nivel apelativo, debemos brindar a la apreciación de la prueba realizada por los juzgadores de hecho en los tribunales sentenciadores. Máxime, cuando tal revisión atañe una condena criminal. En vista de ello, reiteramos que los tribunales apelativos no debemos intervenir con dicha apreciación en ausencia de pasión, prejuicio, parcialidad, error manifiesto o cuando un análisis integral, detallado y minucioso de la prueba así lo justifique. Tomando tales principios en consideración, y luego de una lectura sosegada de la transcripción de los procesos, entendemos que en el caso de autos hubo un error manifiesto al condenar a ambos peticionarios por el delito de escalamiento agravado y el delito de alteración imputado exclusivamente a la señora Torres. Veamos.

Según reseñáramos, la evidencia presentada por el Ministerio Público durante su exposición de la prueba de cargo consistió, esencialmente, de los testimonios

brindados por Lisette, Miguel y el Agente Rivera Canales.[90] De los testimonios ofrecidos por Lisette y Miguel surge que tanto la señora Torres como el señor Casillas entraron a la residencia sin autorización. Es decir, ambos penetraron ilegalmente la residencia. Ahora bien, cada uno de los relatos ofrecidos coinciden en que la señora Torres entró a la residencia de Lisette y Miguel con el único objetivo de buscar a los menores ante una presunta discusión entre sus padres.[91] Sobre este particular, Lisette testimonió que una vez la señora Torres entró a su residencia esta dijo "[m]e voy a llevar a los nenes".[92] De hecho, en respuesta a preguntas formuladas por el abogado de la defensa durante su turno de contrainterrogatorio, la propia Lisette reconoció que su suegra, la señora Torres, no entró a la residencia con el fin de "caerle encima".[93]

Cónsono con el testimonio ofrecido por Lisette, Miguel expresó que la señora Torres entró con el objetivo de buscar a los menores ante la presunta discusión que surgió entre este y su compañera Lisette.[94] Miguel reconoció que su hijo pudo haber llamado a la señora Torres para que lo buscara. Sobre esta posibilidad, este indicó que tanto el menor como la señora Torres, "todo el

---

[90] Véase supra nota 6.

[91] Véase supra nota 16 y el texto citado; véase, además, Transcripción del Juicio en su fondo, págs. 314 (ln. 2-23); 315 (ln. 1-11); 316 (ln. 18-20); 353 (ln. 3-23); 361 (ln. 13-14).

[92] Véase supra nota 16 y el texto citado.

[93] Véase supra nota 32 y el texto citado.

[94] Véase supra nota 43 y el texto citado.

tiempo se hablan… [c]ualquier cosita, fun…, y para allá iba abuela a buscarlo".[95] Esta versión fue confirmada tanto durante el testimonio de Lisette[96] como durante el relato ofrecido por el Agente Rivera Canales[97]. En ese escenario, y sin evidencia alguna adicional, no hallamos base racional para imputarle a la señora Torres una intención criminal *al momento* de entrar a la residencia de su hijo.

Nótese que el incidente físico que se suscitó entre la señora Torres y Lisette surgió *posteriormente*, una vez Lisette se negó a acceder que la señora Torres se llevara a los menores. Siendo así, y no habiendo evidencia adicional que demostrara lo contrario, no debemos adjudicarle a la señora Torres la intención de cometer el delito de agresión grave desde el momento que entró a la residencia. Por lo tanto, esa intención de agredir y posterior ejecución no puede ser considerada como el elemento mental de intención adicional requerido para la consumación del delito de escalamiento. Como mencionáramos, "[s]i la intención de cometer el delito de apropiación ilegal o cualquier delito grave surge con posterioridad a la persona haber penetrado al lugar

---

[95] Véase Transcripción del Juicio en su Fondo, pág. 333 (ln. 5-9). Véase, además, supra nota 44.

[96] Íd., págs. 234, 235 (ln. 1-3).

[97] Íd., págs. 353 (ln. 3-23); 361 (ln. 13-14).

protegido por el artículo, no se da el delito de escalamiento".[98]

En lo que respecta al señor Casillas, tanto el testimonio de Lisette como el testimonio de Miguel no ofrecen hecho base alguno que demuestre que este entró a la residencia con la intención de cometer un delito grave o el delito de apropiación ilegal. Por el contrario, de ambos testimonios surge que el señor Casillas llegó a la residencia una vez su compañera se encontraba dentro de la misma en medio de un intercambio con Lisette. Incluso como parte de su teoría del caso, el propio Ministerio Público reconoció que la *razón* por la cual los peticionarios entraron a la residencia fue para llevarse a los nenes ante el hecho de que sus padres estaban en una disputa.[99]

De esta manera, todos los testimonios ofrecidos durante el juicio coinciden en que los peticionarios entraron a la residencia de Miguel y Lisette con el fin de buscar a los menores, ya que presuntamente sus padres estaban discutiendo. Una vez Lisette se opuso a que se lleven a los niños es que comienza la agresión. Tanto el testimonio de Lisette como el testimonio de Miguel así lo confirman al reconocer que los peticionarios penetraron la residencia con el propósito de buscar a los nenes luego que uno de ellos llamara a la señora Torres por el

---

[98] D. Nevarez Muñiz, Nuevo Código Penal de Puerto Rico, op. cit., pág. 275.

[99] Véase Transcripción del Juicio en su Fondo, págs. 75-82; 83 (ln. 1-15).

celular. Aun cuando aceptáramos que la señora Torres entró a la residencia con coraje o "armá",[100] como mencionaron los testigos de cargo, ese simple hecho no nos permite concluir que su intención al entrar era cometer un delito de agresión o cualquier otro delito grave.

Ante este cuadro fáctico, concluimos que el Ministerio Público no cumplió con su responsabilidad de demostrar más allá de duda razonable cada uno de los elementos constitutivos del delito de escalamiento, según tipificado en el Art. 203 del Código Penal de 2004, supra. Conforme a lo expuesto anteriormente, el delito de escalamiento requiere que el Ministerio Público no tan solo presente evidencia dirigida a demostrar la intención de penetrar la estructura, sino que además debe presentar evidencia tendente a demostrar la intención específica y simultánea a la penetración de cometer delito grave o delito de apropiación ilegal.

En el caso de autos, no hay duda de que el Ministerio Público no logró probar este elemento de simultaneidad entre la penetración a la residencia de Miguel y Lisette y la intención de los peticionarios de cometer el delito de apropiación ilegal o cualquier delito grave. Por consiguiente, no se probaron más allá de duda razonable *todos* los elementos del delito de escalamiento agravado y su conexión con los peticionarios. Ante ello, es evidente que el Tribunal de Apelaciones incidió al confirmar la

---

[100] Véase supra nota 16 y texto citado.

sentencia condenatoria impuesta por el Tribunal de Primera Instancia en lo que respecta al delito de escalamiento.

En ese escenario, tenemos la obligación de dejar sin efecto el veredicto condenatorio en lo que concierne al delito de escalamiento agravado. Una mera entrada no autorizada a una propiedad sin los fines ulteriores establecidos en el Código Penal, ciertamente no constituye escalamiento. Por ello, mantener la condena de escalamiento agravado en contra de los peticionarios equivaldría a considerar como constitutivo de delito *hechos distintos* a los consignados en el Art. 203 del Código Penal de 2004, supra. Esto no tan solo sería contrario a las concepciones más básicas imperantes en nuestro ordenamiento jurídico, sino que además soslayaría nuestra responsabilidad como foro apelativo de revertir dictámenes que son contrarios a derecho.

En lo que concierne al delito de alteración a la paz imputado a la señora Torres únicamente, resolvemos que en el presente caso no se cumplen los elementos del delito de alteración a la paz, según tipificado en el Art. 247 del Código Penal de 2004, supra, particularmente en su inciso (a). Anteriormente indicamos que uno de los elementos de dicho delito es que la paz de la víctima sea efectivamente alterada. Para que ese elemento se configure es necesario que la víctima se encontrase en un estado de paz o tranquilidad previo a la intervención del acusado. De lo contrario, no estaríamos ante un escenario de alteración a

la paz propiamente, ya que no habría ninguna paz o tranquilidad que pudiese ser alterada.

Luego de examinar la totalidad de la transcripción de la prueba testifical que obra en autos, concluimos que en el presente caso no se configuró ese primer elemento del delito de alteración a la paz. Como bien surge de la exposición de hechos que antecede, al momento en que la señora Torres entró a la residencia de su hijo Miguel y su nuera Lisette, ambos no se encontraban en un estado de paz o tranquilidad. Por el contrario, estaban en medio de una discusión de pareja. Por lo tanto, no se le puede imputar a la señora Torres haber alterado una paz que previo a su intervención no existía. Siendo así, también procede la revocación de la sentencia condenatoria en contra de la señora Torres en lo que respecta al delito de alteración a la paz.

En resumen, procede revocar la condena por el delito de escalamiento agravado y, en consecuencia, la correspondiente pena de tres (3) años y un día de reclusión impuesta a los peticionarios. Así mismo, corresponde revocar la condena por el delito menos grave de alteración a la paz y, por ende, la pena de noventa (90) días impuesta en contra de la señora Torres. No obstante, luego de examinar con rigor el expediente en su totalidad y la transcripción de los testimonios vertidos en el juicio, no vemos indicio alguno de que el juzgador de los hechos hubiese actuado con prejuicio, pasión,

parcialidad o que existiese error manifiesto respecto al veredicto de culpabilidad por el delito de agresión menos grave en contra de los peticionarios. Por ende, confirmamos la sentencia condenatoria en lo que concierne al delito de agresión menos grave.

**IV**

Por los fundamentos expresados, modificamos parcialmente la Sentencia dictada por el Tribunal de Apelaciones, la cual a su vez confirmó los dictámenes condenatorios emitidos por el Tribunal de Primera Instancia. Por una parte, revocamos el dictamen impugnado respecto a la determinación de culpabilidad por el delito de escalamiento agravado contenido en el Art. 204 del Código Penal de 2004, supra, en contra del Sr. Raymond Casillas Díaz y de la Sra. Zaida M. Torres Martínez. De igual forma, revocamos el fallo en contra de la Sra. Zaida M. Torres por el delito de alteración a la paz, tipificado en el Art. 247 del Código Penal de 2004, supra. Por otra parte, confirmamos el veredicto de culpabilidad por el delito de agresión menos grave, según tipificado en el Art. 121 del Código Penal de 2004, supra, en contra de ambos peticionarios.

Se dictará sentencia de conformidad.


                                        Edgardo Rivera García
                                        Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*Certiorari*

El Pueblo de Puerto Rico

    Recurrido

       v.

Raymond Casillas Díaz, Zaida M.
Torres Martínez

    Peticionarios

CC-2013-0144

SENTENCIA

En San Juan, Puerto Rico, a 26 de febrero de 2014.

Por los fundamentos expuestos en la Opinión que antecede, modificamos parcialmente la Sentencia dictada por el Tribunal de Apelaciones. Por una parte, revocamos el dictamen impugnado respecto a la determinación de culpabilidad por el delito de escalamiento agravado contenido en el Art. 204 del Código Penal de 2004, 33 L.P.R.A. ant. sec. 4832, en contra del Sr. Raymond Casillas Díaz y de la Sra. Zaida M. Torres Martínez. De igual forma, revocamos el fallo en contra de la Sra. Zaida M. Torres por el delito de alteración a la paz, tipificado en el Art. 247 del Código Penal de 2004, 33 L.P.R.A. ant. sec. 4875. Por otra parte, confirmamos el veredicto de culpabilidad por el delito de agresión menos grave, según tipificado en el Art. 121 del Código Penal de 2004, 33 L.P.R.A. ant. sec. 4750, en contra de ambos peticionarios.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal Supremo.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo